The State of Ohio, Appellee, *v.* Jackson, Appellants.

(No. 73AP-103—Decided September 18, 1973.)

Appeal: Court of Appeals for Franklin County.

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Miles C. Durfey,* for appellee.

*Mr. Roy F. Martin, Mr. Richard H. Ferrell* and *Mr. William S. Lazarow,* for appellant.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas.

Defendant was found guilty, following a jury trial, of one count of armed robbery and one count of assault with intent to rape, and sentenced to be imprisoned in the Ohio Penitentiary with the sentences to run concurrently. Through appointed counsel, defendant appeals and raises six assignments of error as follows:

"First Assignment of Error

"The Failure to Conduct an Inquiry to Determine Defendant's Capacity to Stand Trial Denied the Accused Due Process of Law as Guaranteed by the Fourteenth Amendment.

"Second Assignment of Error

"The Refusal to Allow Defendant to Amend his Plea Was a Denial of Due Process Required by the Fourteenth Amendment Since Defendant Was Deprived of Such a Vital Defense.

"Third Assignment of Error

"Defendant Was Denied Effective Representation of Counsel at Time of Arraignment in Violation of His Sixth and Fourteenth Amendment Rights.

"Fourth Assignment of Error

"Defendant Was Denied The Right to Counsel at Trial Since His Waiver of Counsel Was Not Made Knowingly and Intelligently.

"Fifth Assignment of Error

"Defendant Acting Pro Se Did Not Receive Adequate Protection From The Trial Judge.

"Sixth Assignment of Error

"The Court Violated Defendant's Right to Compulsory Process in Violation of His Sixth and Fourteenth Amendment Rights."

The record indicates that the indictment was filed on November 27, 1972, and served upon defendant on December 6, 1972. On December 8, 1972, a written plea of not guilty was entered by defendant, indicating that he was represented by attorney J. Michael McGinley, but signed on his behalf by the Legal Aid and Defender Society. On De-

cember 19, 1972, a notice that a pre-trial hearing had been set for January 9, 1973, was filed.

On January 15, 1973, a journal entry, signed by the prosecuting attorney and James Kura (attorney for the defendant), ordering a medical examination of defendant was filed. By this entry, Southwest Mental Health Center was designated to investigate and examine into the mental condition of the defendant, pursuant to R. C. 2945.40.

On February 15, 1973, there was filed an apparent xerox copy of a letter dated January 31, 1973, from Southwest Mental Health Center, which apparently constitutes its report on defendant's mental health condition. A proof of service filed February 16, 1973, indicates that on that date a copy of the report of Southwest Mental Health Center was served by ordinary mail upon Roy F. Martin, counsel for defendant. On the same date, a motion was filed by attorney J. Michael McGinley, and sustained by an entry, removing his name as attorney of record in this case, "for the reason that he does not know the defendant, and has never discussed his case with anyone, or been retained to represent Patrick Jackson." The case proceeded to trial on Wednesday, February 21, 1973, without further inquiry or determination of the mental capacity of defendant to stand trial.

The transcript of proceedings indicates that some discussion between the defendant and the court may have occurred prior to a court reporter being present, inasmuch as the transcript commences with the following:

"THE DEFENDANT: I ain't going to trial

"THE COURT: You are going to be gagged, Mr. Jackson, if you don't be quiet.

"THE DEFENDANT: Go ahead, speak your piece.
"* * *

"THE COURT: * * *You came before this Court on arraignment day, December 8, 1972, and entered a not guilty plea to these charges. The record shows at the time of the not guilty plea, which you signed, you were represented for arraignment purposes only by Legal Aid and you informed the Court at that time that you were represented by Mr. Michael McGinley

"THE DEFENDANT: I haven't made any contact with—they won't let me make any calls over there

"* * *

"THE COURT: This case was called for pretrial conference and you were brought over December 19th at which time Mr. McGinley did not show up. The Court called Mr. McGinley and Mr. McGinley advised the Court that he did not represent you. At that time the Court asked the Legal Aid representative, Mr. Kura, to come in and discuss this matter with you and Mr. Kura advised this court that you did not wish Legal Aid to represent you; that you had in mind either Mr. Davis, Mr. William Davis or Mr. Webster Lyman. The Court contacted Mr. Lyman and Mr. Lyman advised the Court he did not represent you and was not going to represent you and the Court was advised then, finally, that Mr. Davis was not representing you.

"Mr. Jackson, you were brought before this court a couple weeks ago and you were advised at that time that the Court was going to appoint Legal Aid to represent you unless you could come into this Court within approximately five or six days with an attorney and inform the Court who the lawyer was going to be in the case that was going to represent you and that this case was going to be tried.

"THE DEFENDANT: I have not made no contact

"THE COURT: This case is set for trial this morning, Mr. Jackson, and the case is going to be tried this morning as I advised you.

"THE DEFENDANT: I refuse.

"THE COURT: Mr. Kura is here and

"THE DEFENDANT: I am not going to have no trial.

"THE COURT: I am going to gag you

"THE WITNESS: Well, go ahead

"THE COURT: You are going to have a trial this morning. Legal Aid is going to be here in the Courtroom. Now, we will call the Jury. Would you call the Jury, please.

"THE DEFENDANT: This is a forceful trial.

"THE COURT: This is your trial, sir, and you are going to remain silent except when you are addressed by the Court or the attorneys.

"THE DEFENDANT: A forceful trial.

"THE COURT: You are entitled to a speedy trial, Mr. Jackson, and this is what I am making available to you. A speedy trial.

"* * *."

A jury was called for voir dire examination and the court advised the jury as follows:

"As I have said before this is the case of the State of Ohio against Patrick G. Jackson. Mr. Jackson is sitting at the counsel table; at his left is Mr. James Kura, a member of the Columbus Bar and seated with Mr. Jackson. * * * The State is being represented by Mr. John Salimbene."

Following voir dire examination by the prosecuting attorney, the following occurred:

"THE COURT: Anything on behalf of the defense?

"MR. KURA: The Defendant states that he refuses to have anything to do with me, I am not his representative so at this point, your Honor, I will remain moot until and if the Defendant asks me any question or asks me to intercede in his behalf.

"THE COURT: Very well. Gentlemen, I take it there are no challenges for cause. Any challenge preemptorily, Mr. Salimbene?

"MR SALIMBENE: The State is satisfied, your Honor.

"THE COURT: Mr. Jackson, do you wish to challenge anybody on the jury?

"THE DEFENDANT: I refuse everything. This is not my representative so I refuse everything. This man is not my representative.

"THE COURT: Very well, Mr. Jackson. * * *"

The state called two witnesses and defendant, at various times, interrupted the questioning of the witnesses. The court offered defendant personally an opportunity to examine the witnesses, and he did ask certain questions of one of the witnesses which consisted primarily of statements by defendant of his own past history. Following the state's case, the court asked Mr. Kura to explain to defendant his rights at that stage of the case. Mr. Kura also at that time made several motions, prefaced with the statement that he had never been officially appointed to the case,

He requested the court to look further into the competency of defendant to stand trial. This was overruled by the trial court. Repeating the fact that he had not been officially appointed to the case, Mr. Kura also asked leave to amend the plea of not quilty to one of not guilty by reason of insanity, and requested a continuance in order to subpoena witnesses on behalf of defendant. This also was denied by the trial court. The court stated:

"Well, in view of the fact we have already had an examination and the examiner has advised the Court that the Defendant is capable of standing trial the Court doesn't feel justice would be served by granting a continuance. The motion will be overruled."

By the first assignment of error, defendant, through counsel, contends the trial court erred in failing to conduct an inquiry to determine defendant's capacity to stand trial.

By entry of January 15, 1973, the trial court did determine that it had been suggested that defendant is not now sane and that defendant should be examined as to his mental condition. As a result of that order, the trial court received the letter dated January 31, 1973, and filed herein on February 15, 1973, from the Southwest Mental Health Center, signed by its director of forensic psychiatry, which reads as follows:

"The above captioned individual pursuant to the provisions of Section 2945.40 of the Ohio Revised Code, was psychiatrically examined under the request of the court on January 25, 1973, by Henry Luidens, M. D., a forensic psychiatric consultant to Southwest Community Mental Health Center.

"It is the opinion of our forensic psychiatry staff that Patrick G. Jackson is competent and understands the nature and consequences of the charges against him. He is considered sane and able to counsel in his defense."

R. C. 2945.37 provides for such an inquiry into the present sanity of a defendant in a pending criminal action and provides that "the court shall proceed to examine into the question of sanity or insanity of said person, or in its discretion may impanel a jury for such purpose." R. C. 2945.38 provides, in pertinent part:

"If the court or jury finds, upon the hearing provided for in Section 2945.37 of the Revised Code, that the accused is sane, he shall be proceeded against as provided by law. If the court or jury finds him to be not sane, he shall be forthwith committed by the court to a hospital for the mentally ill within the jurisdiction of the court. If the court finds it advisable, it shall commit such person to the Lima state hospital until he is restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law."

R. C. 2945.40 does provide for commitment of a defendant to either the Lima State Hospital, a local hospital for the mentally ill, or disinterested qualified physicians, to investigate and examine into the mental condition of a defendant and to testify as experts at his trial or other hearing. The only provision in that section for a report upon the results of the investigation, observation, or examination, is the following:

"* * * Such persons so appointed may be required by the court to prepare a written statement under oath, concerning the mental condition of the defendant, and file the same in the case. Such report shall not be read as evidence, except that it may be used by either counsel on the cross-examination of the witness who signed the same. * * *"

R. C. 2945.40 further provides that:

"The expert witnesses appointed by the court may be called by the court and shall be subject to examination and cross-examination by the prosecuting attorney and counsel for the defendant. The appointment of such expert witnesses, and their testifying as witnesses, shall not preclude the prosecuting attorney or defendant from calling other witnesses to testify on the subject of insanity. * * *"

R. C. 2945.37, 2945.38 and 2945.40, when read in pari materia, clearly contemplate and require that the determination of the present sanity of the person accused of crime whose cause is pending is to be made either by the court or by a jury. See *State, ex rel. Smilack*, v. *Bushong* (1952), 93 Ohio App. 201. While the court may refer such a defendant to certain authorities for examination, observation, or

investigation, with respect to his mental condition, the determination of present sanity is not made by such authorities, but rather must be made either by the court or by jury. Such investigation, observation, or examination is merely a means of obtaining evidence to be considered by the court or jury in determining present sanity of the defendant. R. C. 2945.40 preserves the right of examination and cross-examination of such witnesses.

The record of this case is devoid of any indication that the trial court made a determination of the present sanity of the defendant, or held a hearing in regard thereto. The record does reflect that prior to the jury being sworn for voir dire examination, the trial court made the following statement:

"Let the record show that this man has had a psychiatric evaluation by the Southwestern Clinic and that the court has received a report from the clinic stating that this defendant is able to stand trial and we will make the report a part of this file and the case record."

The trial court, however, made no determination of the issue, and held no hearing thereon.

Once the trial court made a determination that there was cause to investigate the present sanity of the defendant, as the trial court did by the January 15, 1973, entry, the trial court was required to proceed with a hearing and make the determination provided by R. C. 2945.37 and 2945.38, *supra*.

This case is not controlled by *State* v. *Jemison* (1968), 14 Ohio St. 2d 47. That case held that it was not necessary to have a second examination into the question of the sanity of a defendant unless the court is informed that the defendant has become insane since a prior determination of sanity was made. Furthermore, defendant in that case was represented by counsel, and a request for a sanity hearing was withdrawn with the approval of both counsel and the defendant himself.

Accordingly, we find the first assignment of error to be well taken.

By the second assignment of error, defendant, through

counsel, contends that the trial court erred in refusing to allow a change of plea on behalf of defendant to not guilty by reason of insanity. This assignment of error is well taken. Had there been a sanity hearing as required and a proper determination made by the trial court, a change of plea may have been frivolous. However, in light of the fact that the defendant was at no time represented by counsel prior to trial, except briefly at the arraignment upon the indictment, and because of the improbability of a defendant who in fact is insane raising such a defense, such request by counsel, even though he was not officially appointed by the court to represent the defendant, should have been given consideration rather than having been summarily overruled.

The third, fourth and fifth assignments of error are related and will be considered together. They relate to defendant's being represented by counsel at his trial. The third assignment of error is not well taken. There is no indication in the record that the defendant was denied effective representation of counsel at the time of arraignment. However, the record does reflect that defendant was at no time represented by counsel subsequent to his arraignment and through his trial. Likewise, there was no express waiver of counsel and no inquiry by the court to the defendant as to his desire to waive counsel. The trial court did not appoint The Legal Aid and Defender Society or Mr. Kura to represent defendant, although Mr. Kura reminded the court on several occasions that he had not been appointed as counsel. While the defendant indicated he did not want to be represented by legal aid, he at no time indicated that he did not want to be represented by counsel. The record does not indicate that the trial court informed defendant of his right to counsel and of his right to represent himself, and that if he wished to be represented by appointed counsel it would be required that his counsel be The Legal Aid and Defender Society.

While not directly applicable, because it did not take effect until after the trial in this case, Crim. R. 44 provides that:

"(A) Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel. * * *

"(C) Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.

"(D) The determination of whether a defendant is able or unable to obtain counsel shall be made in a recorded proceeding in open court."

With the exception of the requirement of paragraph (D) and the requirement that waivers be in writing, Crim. R. 44 merely restates the law as we understand it to have been prior to the adoption of that rule.

The record in this case does not reflect that the trial court fully advised defendant of his right to assigned counsel, or that trial court made an inquiry as to whether defendant knowingly, intelligently and voluntarily waived his right to counsel. Such cannot be assumed from a silent record. Accordingly, the fourth assignment of error is well taken.

The fifth assignment of error is also well taken. While the trial court was faced with a very vexing situation and an obstreperous defendant who did not wish to go to trial, and one who, it had been suggested, was insane, and whose conduct during the trial would indicate that either he was incapable of defending himself or was not willing to do so, it instructed him that he was required to remain silent except when addressed by the court or the attorneys. The only other step that the trial court took was to have a legal aid attorney present in the courtroom. When the defendant made statements concerning himself which he clearly should not have made during what was supposed to be cross-examination of a witness, the trial court took no steps whatsoever to see to it that defendant was advised of any

of his constitutional rights or that he understood them.

The trial court was confronted with a situation of a defendant who was either incapable of conducting a proper defense, whether because of mental incapacity or lack of understanding, or one who very cleverly attempted to disrupt his trial so that he would not receive a fair trial. When confronted with such a situation, it is the responsibility of the trial court to make an inquiry, out of the presence of the jury, as to which situation is involved, make a determination thereof, and take the appropriate steps to insure that both the defendant and the state receive a fair trial. See new Crim. R. 43 (B). The fifth assignment of error is well taken.

The sixth assignment of error is also well taken. While defendant did indicate that he would like to subpoena ten people and that he had the names and addresses of them, and the trial court stated "the court has already handled this part of the case," this does not establish a denial of compulsory process. Any problem in this regard would have been solved by the appointment of counsel for the defendant, an adequate inquiry into the waiver of counsel by defendant, proper advice by the court to defendant as to his rights, and a determination as to whether defendant understood his rights and could and did knowingly and intelligently waive them. The trial court made no such determination, at least no such determination is reflected on the record, and this court is unable from the record to determine whether or not defendant was advised of his rights, understood them, and knowingly and intelligently waived them.

Had such determinations been made adverse to the defendant, there would be no abuse of discretion on the part of the trial court in denying a continuance at the close of the state's case, for the purpose of subpoenaing witnesses who had not previously been subpoenaed, when the request was first made at the conclusion of the state's case. However, defendant was not represented by counsel from the time of the arraignment through his trial, and there is no indication in the record that defendant at any time was

afforded any opportunity to subpoena witnesses in his own defense. Rather, the record indicates that defendant was incarcerated pending trial and defendant himself stated, which is uncontroverted, that he was not allowed to contact anyone.

The record does reflect that defendant refused to be represented by The Legal Aid and Defender Society. The following occurred during cross-examination by the state:

"Q. Mr. Jackson, isn't it a fact that Mr. Kura of the Legal Aid and Defenders Society has been sitting next to you and available for you to speak with and you have refused to speak with him?

"A. That is right, because everything has been cut off over there at the County. I can't get in touch with nobody.

"Q. Have you in fact sought the advice of Mr. Kura?

"A. I refuse his representation.

"MR. SALIMBENE: Thank you. I have no further questions.

"THE DEFENDANT: I want my personal representative. I don't want no public defender.

"THE COURT: Very well."

In summary, this was a unique case, a perplexing, vexing and difficult situation for a trial judge. On one hand, the trial court cannot permit a defendant to avoid trial by obstructive tactics. However, where there is an indication to the trial court that the obstructive tactics of the defendant may be the result of a lack of mental capacity rather than an intelligent design, the trial court has a duty to protect the defendant from his own incapacity to properly defend himself, including the appointment of counsel over the protestations of defendant, when appropriate.

Counsel has also brought the fact of the filing of a motion for new trial in the trial court upon the grounds of newly discovered evidence to the attention of this court. However, such matters are for the determination of the trial court in the first instance, and are not properly before the court, and have been given no consideration by the court in its examination of this appeal.

For the foregoing reasons, the first, second, fourth,

fifth and sixth assignments of error are sustained, and the third assignment of error is overruled; and the judgment of the Franklin County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings in accordance with law.

*Judgment reversed and cause remanded.*

Troop, P. J., and Strausbaugh, J., concur.

Strausbaugh, J., concurring separately. I agree with the conclusion of my colleagues in their ruling upon the first three assignments of error and in their conclusion that the judgment should be reversed and remanded. However, I would overrule the fourth, fifth and sixth assignments of error.