THE STATE OF OHIO, APPELLANT, *v.* JEMISON, APPELLEE.

48

(No. 40912—Decided April 17, 1968.)

**50**

*Mr. C. Howard Johnson*, prosecuting attorney, for appellant.

*Mr. Jerry Weiner* and *Mr. Bernard Cohen*, for appellee.

HERBERT, J. Two questions are presented by this appeal. (1) Was it error for the trial court to proceed to trial without making a determination of defendant's present sanity *after* counsel filed a motion therefor under Section 2945.37, Revised Code? (2) Was the evidence discovered at defendant's residence under the circumstances of this case admissible at the trial?

The pertinent portion of Section 2945.37, Revised Code, reads:

"If the attorney for a person accused of crime whose cause is pending in the Court of Common Pleas, before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court * * * the court shall proceed to examine into the question of the sanity of said person, or in its discretion may impanel a jury for such purpose. * * *"

In *Evans* v. *State,* 123 Ohio St. 132, and *State* v. *Smith,* 123 Ohio St. 237, this court held that Section 13441-1, General Code (now Section 2945.37, Revised Code), created a mandatory duty to conduct an inquiry into the sanity of the accused once the suggestion of insanity was made to the court. Those decisions have no application to the instant case for the reason that defendant in this case was committed to the Lima State Hospital for observation pursuant

to Section 2945.37, Revised Code, and found sane *prior to* counsel's motion under that statute. Examination of Section 2945.40, Revised Code, shows that commitment to the Lima State Hospital is one of the permissible methods for making the sanity determination pursuant to Section 2945.37. Section 2945.40 reads in part:

"In any case in which insanity is set up as a defense, *or in which present insanity of the accused is under investigation by a court or jury*, the court may commit the defendant to a local hospital for the mentally ill, or the Lima State Hospital, where the defendant shall remain under observation for such time as the court directs not exceeding one month. * * *" (Emphasis added.)

Clearly, the same kind of determination of present sanity may be made upon a suggestion of insanity. Where one method of inquiry is employed, *i. e.*, commitment to the Lima State Hospital, followed by a finding of sanity by competent physicians after 30 days of observation, a second inquiry into the sanity of the defendant, under Section 2945.37, Revised Code, would be vain. Once the determination is lawfully made that the defendant understands the nature of the charges against him and can counsel in his own defense, he may be tried. *State, ex rel. Townsend,* v. *Bushong,* 146 Ohio St. 271.

We note that the suggestion of present insanity by counsel for defendant was made several months after the report from the Lima State Hospital finding defendant sane was received. Where there is a substantial delay between the determination of present sanity and trial, it is possible that an accused could become insane subsequent to the original determination but before the trial. A reading of the psychiatrist's letter, filed by counsel in this case, discloses no suggestion that defendant had become insane subsequent to the determination of sanity, but, to the contrary, ventures an opinion that defendant, "* * * never was actually responsible for any of his actions." This was a matter of defense, and was introduced by the defense at trial. It did not require a second determination of present sanity or capacity to stand trial.

Since we take the position that a satisfactory determination of present sanity was made, we need not consider whether a suggestion of present insanity under Section 2945.37, Revised Code, may be withdrawn or waived, although there may be considerable significance attached to a request by diligent counsel and defendant that the request for a sanity hearing be withdrawn.

We hold that once a determination of present sanity is made pursuant to Sections 2945.37 or 2945.40, Revised Code, and the defendant found sane for the purpose of standing trial, a *subsequent* suggestion of insanity pursuant to Section 2945.37 which does not inform the court that defendant has become insane since the prior determination does not require the court to inquire again into the question of the sanity prior to the trial of the accused.

The second question presented is whether the trial court erred in overruling defendant's motion to suppress evidence of the body of Virginia Jemison and bullets removed from her body and from the mattress on which it was found. Defendant contends that this evidence was inadmissible under *Mapp* v. *Ohio*, 367 U. S. 643, as the product of an illegal search and seizure in violation of defendant's Fourth Amendment rights. The court below agreed, relying on *Morrison* v. *United States*, 262 F. 2d 449, and *People* v. *Albea*, 2 Ill. 2d 317, 118 N. E. 2d 277. The fact patterns in those cases, and in virtually all of the cases where the *Mapp* exclusionary rule has been applied, bear little resemblance to the instant case.

In this case, the police had a warrant for the arrest of defendant on a charge of first degree murder issued on the afternoon of May 10, 1965. They had his residence under surveillance, but did not know whether he had concealed himself there. Throughout the afternoon and evening of May 10, they tried and were unable to locate defendant's wife who resided with him. On the morning of May 11, 1965, they located a key and entered the house. No force was used, although Section 2935.12 of the Revised Code empowers an officer executing an arrest warrant to "break down an outer or inner door or window of a dwelling

house.'' Under these circumstances, it was within the power of the officer in the execution of an arrest warrant to look wherever defendant might reasonably secrete himself within the house. In so doing, they discovered the dead body of Virginia Jemison, in her bed.

Thereafter, the procedure of the officers was in conformity with recognized police procedure. The record does not disclose any violation of defendant's constitutional rights under the Fourth Amendment to, or any other provision of the amendment to the Constitution of the United States. *Ker* v. *California*, 374 U. S. 23; *United States* v. *Haley*, 321 F. 2d 956. See *Harris* v. *United States*, 331 U. S. 145, 152-53.

The mere fact that there was time to obtain a search warrant does not invalidate the discovery. *United States* v. *Rabinowitz*, 339 U. S. 56 (overruling *Trupiano* v. *United States*, 334 U. S. 699). It is unnecessary to inquire into the subjective intent of the police officers since the validity of the entry and discovery of evidence was objective. See *Massachusetts* v. *Painten* (1968), — U. S. —, 36 U. S. L. W. 3283 (concurring opinion of Mr. Justice Fortas, and dissenting opinion of Mr. Justice White) (certiorari dismissed on other grounds). We hold that neither the entry into defendant's residence nor the discovery of evidence of the murder of Virginia Jemison was unlawful under the circumstances of this case.

For these reasons, the judgment of the Court of Appeals is reversed and the judgment of conviction by the Court of Common Pleas is affirmed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS and O'NEILL, JJ., concur.

BROWN, J., concurs in paragraph two of the syllabus and in the judgment.

SCHNEIDER, J., concurs in paragraph one of the syllabus but dissents from the judgment as to the conviction on the second count.