Argued April 25, affirmed September 6, reconsideration denied
December 5, 1978, petition for review denied March 13, 1979,
285 Or 479

STATE OF OREGON, *Respondent,*
*v.*
NADINE JORDAN, aka Juanita Adams, *Appellant.*
(No. C 77 01 00736, CA 8349)

583 P2d 1161

James E. Mountain, Jr., Deputy Public Defender,
Salem, argued the cause for appellant. With him on

the brief was Gary D. Babcock, Public Defender, Salem.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

Defendant appeals from her conviction of the crime of hindering prosecution. ORS 162.325. She assigns as error the trial court's denial of her motion to suppress evidence of a search of her residence that resulted in the discovery of the person whom defendant was charged with concealing.

Portland Police Officer Ault learned from a confidential reliable informant that one Sandra Jordan or Pennington was living at a certain house in northeast Portland and using a yellow Pinto automobile. Ault knew that Jordan was subject to an outstanding arrest warrant for failure to appear on a robbery charge. He and three other officers went to the house to execute the arrest warrant. Upon seeing a yellow Pinto parked outside, Ault and another officer approached the front door while the other two officers covered the rear of the house. The defendant and another woman answered the door. The officers stated their purpose and asked the women for their names and some identification. Defendant identified herself as Juanita Adams but would not produce any identification. The women refused to let the officers search the residence. The policemen returned to their vehicles and Officer Ault ran a records check on Juanita Adams. The name was reported as an alias for Sandra Jordan. Not knowing whether defendant was or was not Jordan, the officers returned to the house and took her into custody on the robbery charge with the intention of establishing her identity through fingerprints at the station.

After observing a mug shot of Sandra Jordan, but still unsure that he had the right person, Officer Ault ordered the other officers to go back up to the house to see if there was another person in the house who was actually Sandra Jordan.[1] He again compared the mug

---

[1] Officer Ault testifed that one of the reasons for ordering the other officers back into the house was to locate any other witnesses to the arrest in case civil litigation resulted. It is clear from the testimony, however, that the main reason the police entered the house was to search for Sandra Jordan.

shot with the defendant and noted a physical resemblance, but some discrepancy in the physical description. The defendant admitted to Ault that she was Nadine Jordan, but he did not communicate this information to the searching officers at that time.

The officers who conducted the search also were not certain that they had Sandra Jordan in custody. One officer testified:

"Q   Now, when you went back—what factors led you to have some suspicion that the suspect Sandra Jordan might still be in that apartment when you re-entered it after placing the defendant, Nadine Jordan, in custody?

"A   She gave us the name Juanita Adams when we first walked up on the porch and they opened the door. That came back as an alias for Sandra Jordan. So since we had been lied to, we were unsure who she was, and when we went back up on the porch after she had been placed in custody, we went in to see if Sandra Jordan was there or if we, in fact, had Sandra Jordan."

The officers entered the house over the objection of the other woman and discovered the real Sandra Jordan hiding in the attic.

There is no dispute that, based upon the informant's report and the sighting of the Pinto in front of the house, the officers had probable cause to believe that Sandra Jordan could be found within the house. The issue is whether, as defendant contends, the arrest of the defendant dissipated that probable cause so that the subsequent search for Sandra Jordan was not legally justified.

The underlying assumption of defendant's theory is that probable cause is finite and, if it is expended on one suspect, there cannot be enough left for another suspect. That theory is no more tenable than would be its opposite: that with probable cause, as with love, there is always plenty for everybody. The statement of principle most harmonious with the fundamental predicate of the Fourth Amendment, reasonableness, fits between those two extremes.

■ Probable cause may justify the arrest of more than one person. If, for example, a policeman sees A and B bending over a dead man and each accuses the other of killing the victim, there is probable cause for the arrest of either or both and the arrest of A does not preclude the arrest of B. Similarly, if A is found one block north of a recently robbed bank and matches the description of the robber, the arrest of A does not preclude the subsequent arrest of B who also matches the description and is found one block south of the bank.[2]

■ In either case, it would be reasonable for the police to arrest both A and B on probable cause even though they believe that only one of them committed the crime. The purpose of the arrest, however, is not the traditional and statutory purpose of an arrest: to charge the arrestee with crime.[3] Rather, it is to initiate a short-term process of sorting out, usually on the scene, to determine which person should be charged with crime, *i.e.,* arrested in the full sense of the word. Thus the initial "arrest" is really in the nature of a stop or detention[4] rather than a true arrest.

Although multiple arrests may be reasonable in certain circumstances, the law does not allow dragnet arrests of many suspects for investigation of each. Factors to separate the reasonable from the unreasonable have been well stated elsewhere:

"Other factors may be important in determining the validity of multiple arrests in a given situation. The degree of certainty that the actual offender is within the

---

[2]For other examples, *see* W. LaFave, Arrest, 260 (1975). *Cf., State v. Hall,* 32 Or App 133, 573 P2d 332 (1977), *rev den* 281 Or 531 (1978).

[3] " 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging him with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest." ORS 133.005(1).

[4] "A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(5).

and
"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry." ORS 131.615(1).

group would seem relevant, along with the size of the group. The seriousness of the offense may affect the result. Also of importance is the need for immediate action, as where two persons of unknown identity are running from the scene of a crime. The available means of postarrest selection may also be a deciding factor. For example, the arrest of three suspects to enable a witness to view them in a lineup may be less objectionable than the arrest of the same number for interrogation. * * *" (Footnotes omitted.) W. LaFave, Arrest, 262 (1975).

■ In this case there clearly was probable cause to believe that Sandra Jordan was in the house. The officers had legal authority to enter to arrest Sandra Jordan in execution of the arrest warrant. ORS 133.235(5) provides:

"In order to make an arrest, a peace officer may enter premises in which he has probable cause to believe the person to be arrested to be present."

Although defendant had been arrested, Officer Ault was not positive that defendant was Sandra Jordan. The officers returned to the house to determine if there was another person who was Sandra Jordan in the house.

■ In essence, the police went to a house they reasonably believed the wanted person to be in. They then took action to freeze the situation, including a reasonable detention of defendant, until they were satisfied that they had properly executed the warrant by arresting the person named therein. There was no indiscriminate holding, no dragnet, no arrest for the purpose of custodial interrogation. Rather, there was a reasonable on-the-scene process to assure that the person arrested was the person they were commanded to arrest. This was reasonable police conduct and the motion to suppress was therefore properly denied.

Affirmed.

**THORNTON, J.,** dissenting.

I cannot agree with the majority opinion for the following reasons:

After defendant had been placed in the patrol car, Officer Ault checked the back of the mug shot he had of Sandra Jordan and noted that defendant's physical description differed from that of Sandra Jordan. Officer Ault did not check the physical description written on the back of the photograph until after he had ordered the officers back into the house to search for any other persons.

The officers then entered the house over the objection of the other woman and subsequently discovered Sandra Jordan hiding in the attic.

The issue on appeal is whether the officers, having probable cause to arrest and then arresting defendant as Sandra Jordan, could have had at the same time probable cause to believe that defendant was not Sandra Jordan and that the real Sandra Jordan was still in the house.

The majority concludes that the officers had probable cause to arrest defendant pursuant to the arrest warrant issued for Sandra Jordan. The facts giving rise to probable cause that defendant was Sandra Jordan were: (1) defendant resided at the address where Sandra Jordan was supposed to be, and (2) gave a name which was an alias used by Sandra Jordan. In addition, however, the majority concludes that the above facts also gave the officers probable cause to believe that defendant was not Sandra Jordan. I cannot agree with the second conclusion.

Probable cause in this context means a well warranted suspicion that defendant was or was not the person named in the arrest warrant. *See, State v. Willis,* 24 Or App 409, 412, 545 P2d 1392, *rev den* (1976). I conclude, as did the trial court, that the police officers had a well warranted suspicion, based upon the facts recited above, that defendant was Sandra Jordan. How then could the officers at the same time have had a well warranted suspicion, arising from the same facts, that Sandra Jordan was still in the house? Having arrested defendant the police officers did not

have probable cause to reenter the house and search for Sandra Jordan. While it is true that the officers may not have been positive of defendant's identity, the mere doubt present in this case was not sufficient to justify the search.

I have no disagreement with any of the hypothetical examples of probable cause for multiple arrests given in the majority opinion. All are proper. However, they are all distinguishable on their facts from the case at bar.

For the above reasons I respectfully dissent.