Argued and submitted April 3, reargued
November 5, 1979, affirmed January 22, 1980

# STATE OF OREGON,
*Respondent,*
*v.*
# NADINE JORDAN, aka
Juanita Adams,
*Petitioner.*

## (CA 8349, SC 25930)

605 P2d 646

James E. Mountain, Jr., Deputy Public Defender, Salem, argued and reargued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

W. Benny Won, Assistant Attorney General, Salem, argued and reargued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solictor General, Salem.

HOWELL, J.

LINDE, J. dissenting.

**HOWELL, J.**

The principal question presented on this appeal is whether a police officer may enter a private dwelling to execute an arrest warrant without obtaining a search warrant.

The facts surrounding the entry and arrest are largely undisputed. Florine Davidson, Sandra Jordan, and defendant Nadine Jordan resided in a house in northeast Portland. Defendant is Sandra Jordan's sister. On January 15, 1977, the house was approached by two Portland police officers, Charles Ault and Sammy Ray Rosson, who had an outstanding warrant for Sandra Jordan's arrest. Ault had learned from reliable sources that Sandra was believed to be living at the house and that she was thought to be driving a yellow Pinto automobile. On the evening in question, a yellow Pinto was parked in the driveway of the house. Ault and Rosson called for reinforcements who surrounded the house. The two then went to the front door and were met by Florine Davidson and defendant Nadine Jordan. The officers stated their purpose and asked the women for their names and some identification.

Defendant Nadine Jordan identified herself as "Juanita Adams" but refused to produce any identification. Both women refused to let the police search the residence. The officers returned to their vehicle and ran a record check on Juanita Adams. The name was reported as an alias for Sandra Jordan. Not knowing whether defendant was Sandra Jordan, the officers returned to the house and took her into custody, intending to establish her identity by means of fingerprinting at the police station.

While seated in the police car, Office Ault observed a mug shot of Sandra Jordan and was uncertain that he had the right person. He ordered the other officers to return to the house to see if there was another person there who was actually Sandra Jordan. The officers entered the house without a search warrant and eventually found Sandra hiding in the attic.

Defendant was charged with hindering prosecution, ORS 162.325. Prior to trial, she filed a motion to suppress any evidence seized as a result of the entry into her home. The evidence she sought to suppress was the person of Sandra Jordan. The trial court denied the motion and, following a trial, defendant was convicted. Defendant's sole assignment of error on appeal is that the trial court should have suppressed the evidence obtained as a result of a search without a search warrant.

The Court of Appeals affirmed defendant's conviction in an opinion that focused principally on the question of whether the officers had probable cause to believe Sandra Jordan was still in the residence after they had taken defendant into custody. 36 Or App 45, 583 P2d 1161 (1978). The court found that the officers did have such probable cause and that the entry was therefore justified under ORS 133.235(5), which provides:

> "In order to make an arrest, a peace officer may enter premises in which he has probable cause to believe the person to be arrested to be present."

The Court of Appeals' opinion was written prior to this court's decisions in *State v. Olson,* 287 Or 157, 598 P2d 670 (1979), and *State v. Peller,* 287 Or 255, 598 P2d 684 (1979), in which we held that an entry into a private home to arrest, without an arrest warrant, was justified only if the state showed the existence of exigent circumstances. Neither *Olson* nor *Peller* decided whether a search warrant in addition to an arrest warrant is necessary to arrest on private premises. That question is now squarely presented.

I

Defendant contends that the failure of the police to obtain a search warrant to enter her premises resulted in a violation of her statutory and constitutional rights. Before turning to the constitutional question in this case, we first examine Oregon statutory law to determine whether the right claimed by the defendant

in this case is in fact protected by legislation. *See State v. Spada,* 286 Or 305, 594 P2d 815 (1979). ORS 133.535 provides, in part:

"The following are subject to search and seizure under [statutes authorizing search warrants]:

" * * * * *

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

Although this statute *permits* the issuance of a search warrant to an officer seeking to arrest a suspect on private premises, the statute does not purport to *require* such a warrant. We conclude from this that Oregon statutes do not require an officer to obtain a search warrant prior to entering a private home to arrest.[1]

## II

We now consider the defendant's claim that the police conduct in this case violated article I, section 9 of the Oregon Constitution[2] and the fourth amendment to the United States Constitution.[3] Both these constitutional provisions, in substantially identical language, protect against unreasonable searches and seizures.

---

[1] This view apparently was shared by the members of the commission that drafted ORS 133.535. *See* Proposed Oregon Criminal Procedure Code § 132, Comment A (Final Draft and Report 1972). It is also the position taken by the drafters of the ALI Model Code of Pre-Arraignment Procedure, § SS 210.3 and commentary, at 124-25, 506-07 (1975).

[2] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[3] The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

As background, while the common law recognized that "every man's house is his castle," it also held that "no one charged with a crime can have a castle against the King's or the State's warrant for his arrest." Wilgus, *Arrest Without a Warrant,* 22 Mich L Rev 541, 800-01 (1922); 1 Chitty, Criminal Law 51-59 (1816). A peace officer armed with an arrest warrant was therefore permitted to enter a private dwelling to effect an arrest if the officer had reason to believe the suspect was inside the dwelling, regardless of whether the officer also had a search warrant.[4]

The United States Supreme Court has left unsettled the question whether and under what circumstances an officer may enter private premises to make a warrantless arrest. *See United States v. Watson,* 423 US 411, 418 n. 6, 96 S Ct 820, 46 LEd 2d 598 (1976); *Gerstein v. Pugh,* 420 US 103, 113 n. 13, 95 S Ct 854, 43 L Ed2d 54 (1975); *Coolidge v. New Hampshire,* 403 US 443, 474-81, 91 S Ct 2022, 29 L Ed 2d 564 (1971). This court has held, however, that absent exigent circumstances an arrest warrant is required before a police officer may enter private premises to make an arrest. *State v. Peller, supra; State v. Olson, supra.* [5]

When this court decided *State v. Olson, supra,* we particularly relied on the United States Supreme

---

[4] According to Professor Wilgus, even an arrest warrant was not considered necessary by most authorities. It was merely necessary that the party making the arrest be acting within his lawful rights. Wilgus, *Arrest without a Warrant,* 22 Mich L Rev 541, 802-03 (1922). *See also* J. Landynski, Search and Seizure and the Supreme Court 26-27 (1966). This meant that an officer could enter without any warrant to arrest for a felony if the officer had probable cause to believe the suspect had committed the felony and probable cause to believe the suspect was within the premises to be entered. *Cf., United States v. Watson,* 423 US 411, 418, 96 S Ct 820, 46 L Ed 2d 598 (1976) (discussing the common law rule and citing numerous authorities).

[5] In *State v. Chinn,* 231 Or 259, 265, 373 P2d 392 (1962), this court held that officers armed with an arrest warrant could enter the suspect's home whether or not they had obtained a search warrant. The opinion notes that such an entry was permitted "both at common law and by statute * * *." We did not discuss the constitutional question raised by defendant in the present case.

Court opinion in *Coolidge v. New Hampshire, supra,* from which we quoted:

"* * * The case of Warden v. Hayden, supra [387 US 294, 87 S Ct 1642, 18 L Ed 2d 782 (1967)], where the Court elaborated a 'hot pursuit' justification for the police entry into the defendant's house without a warrant for his arrest, certainly stands by negative implication for the proposition that *an arrest warrant* is required in the absence of exigent circumstances. * * *" 403 US at 480-81 (emphasis added).

We also relied on *People v. Ramey,* 16 Cal 3d 263, 127 Cal Rptr 629, 545 P2d 1333, *cert. denied* 429 US 929, 97 S Ct 335, 50 L Ed 2d 299 (1976), from which we quoted the following:

" * * * [I]n the absence of a bona fide emergency, or consent to enter, police action in seizing the individual in the home must be preceded by the judicial authorization of *an arrest warrant.*" 545 P2d at 1340 (emphasis added).

Many federal and state courts have held that a police officer may enter private premises to execute a valid arrest warrant as long as the officer reasonably believes that the subject of the arrest warrant is on the premises. *See, e.g., United States v. Woods,* 560 F2d 660, 665-66 (5th Cir 1977), *cert. denied* 435 US 906, 98 S Ct 1452, 55 L Ed 2d 497 (1978); *United States v. Harper,* 550 F2d 610, 613-14 (10th Cir), *cert. denied,* 434 US 837, 98 S Ct 128, 54 L Ed 2d 99 (1977); *United States v. Cravero,* 545 F2d 406, *on pet. for rehearing,* 545 F2d 420 (5th Cir 1976), *cert. denied,* 430 US 983, 97 S Ct 1679, 52 L Ed2d 377 (1977); *United States v. James,* 528 F2d 999, 1016-17 (5th Cir), *cert. denied,* 429 US 959, 97 S Ct 382, 50 L Ed2d 326 (1976); *Rice v. Wolff,* 513 F2d 1280, 1291-92 (8th Cir 1975), *rev'd. on other grounds sub nom. Stone v. Powell,* 428 US 465, 96 S Ct 3037, 49 L Ed 2d 1067 (1976); *United States v. Jones,* 475 F2d 723, 729 (5th Cir 1973); *Rodriguez v. Jones,* 473 F2d 599, 605-06 (5th Cir), *cert. denied,* 412 US 953, 93 S Ct 3023, 37 L Ed2d 1007 (1973); *United States v. Brown,* 151 US App DC 365, 369-370, 467 F2d 419, 423-24 (DC Cir 1972); *United States v.*

*McKinney,* 379 F2d 259, 262-63 (6th Cir 1967); *United States v. Alexander,* 346 F2d 561 (6th Cir 1965), *cert. denied,* 382 US 993, 86 S Ct 575, 15 L Ed2d 480 (1966); *State v. Platten,* 225 Kan 764, 594 P2d 201 (1979); *Nestor v. State,* 243 Md 438, 221 A2d 364, 368 (1966); *Cook v. State,* 35 Md App 430, 371 A2d 433 (1977); *State v. Jemison,* 14 Ohio St 2d 47, 236 NE2d 538 (1968); *State v. Clark,* 40 Ohio App 2d 365, 319 NE2d 605 (1974); *Commonwealth v. Terebieniec,* 268 Pa Super Ct 488, 408 A2d 1120 (1979); *State v. McNeal,* 251 SE2d 484 (W Va App 1978); *People v. Stibal,* 56 Ill App 3d 1048, 14 Ill Dec 652, 372 NE2d 931 (1978).

In *United States v. Cravero, supra,* the court held that "when an officer holds a valid arrest warrant and reasonably believes that its subject is within premises belonging to a third party, he need not obtain a search warrant to enter for the purpose of arresting the suspect." 545 F2d at 421. *Accord, United States v. Woods, supra; United States v. Harper, supra.* The *Cravero* court reasoned that a police officer who has already obtained an arrest warrant—a judicial determination of probable cause to believe that a suspect has committed an offense—may "determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances." 545 F2d at 421. We agree with the holding in *Cravero* and the other cases cited above.[6]

---

[6] We note that the United States Supreme Court has in dicta approved of the *Cravero* holding in *Dalia v. United States,* 441 US 238, 99 S Ct 1682, 60 L Ed2d 177 (1979), in which the court held that a warrant for electronic surveillance need not include a specific authorization to enter covertly the premises described in the warrant. The Court said:

"* * * Often in executing a warrant the police may find it necessary to interfere with privacy rights not explicitly considered by the judge who issued the warrant. For example, police executing an arrest warrant commonly find it necessary to enter the suspect's home in order to take him into custody, and they thereby impinge on both privacy and the freedom of movement. See, *e.g., United States* v. *Cravero,* 545 F.2d 406, 421 (CA5 1976) (on petition for rehearing). * * *" 441 US at 257-58.

*(Continued on following page)*

[398]

Other courts have held that the Fourth Amendment requires police to obtain a search warrant prior to entering private premises to effect an arrest. *See United States v. Prescott,* 581 F2d 1343, 1350 (9th Cir 1978); *Government of Virgin Islands v. Gereau,* 502 F2d 914, 928 (3d Cir 1974), *cert. denied,* 420 US 909, 95 S Ct 829, 42 L Ed2d 839 (1975); *State v. Jones,* 274 NW2d 273 (Iowa 1979); *Laasch v.State,* 84 Wis 2d 587, 267 NW2d 278 (1978). We are of the opinion, however, that there is no constitutional requirement that police officers who hold a valid arrest warrant and have probable cause to believe the subject is located on private premises must also obtain a search warrant

---

*(Continued from previous page)*
We also note that the ALI Model Code of Pre-Arraignment Procedure § 120.6 (1975) permits a law enforcement officer to enter private premises to arrest a person whom he is authorized to arrest if the officer has reasonable cause to believe that the person is present on such premises. The commentators wrote that

" * * * Twenty-five [state] jurisdictions have statutes permitting forcible entries to make any arrest which is otherwise lawful. The statutes in six states authorize forcible entries for purposes of arrest if the arrest is under a warrant or for a felony. The statutes in six states allow forcible entry if the arrest is under a warrant, while in two states the statutes authorize entry to arrest in case of a felony." *Id.* at 310 (commentary). (Footnotes omitted.)

*See also id.* at Appendix XI. The Kansas statute authorizing entry to arrest, K.S.A. 22-2405 (1974), was applied in *United States v. Harper,* 550 F2d 610 (10th Cir), *cert. denied* 434 US 837, 98 S Ct 128, 54 L Ed 2d 99 (1977). The *Harper* court also relied on the *Cravero* decision. The Michigan statute authorizing entry to arrest, Mich Comp Law Ann § 764.21 (1948), was applied in *United States v. Alexander,* 346 F2d 561 (6th Cir 1965), *cert. denied* 382 US 993, 86 S Ct 575, 15 L Ed 2d 480 (1966).

In addition, several courts have indicated but have not directly held that the police may enter private premises to arrest if they have an arrest warrant. *See, e.g., United States v. Houle,* 603 F2d 1297, 1300 n. 5 (8th Cir 1979); *United States v. Calhoun,* 542 F2d 1094, 1102 (9th Cir 1976), *cert. denied* 429 US 1064, 97 S Ct 792, 50 L Ed 2d 781 (1977); *Huotari v. Vanderport,* 380 F Supp 645, 650 (D Minn 1974); *State v. Cook,* 115 Ariz 188, 564 P2d 877, 883 (1977) (quoting *Ramey); People v. Ramey,* 16 Cal 3d 263, 127 Cal Rptr 629, 545 P2d 1333, 1340 (1976) (requiring "the judicial authorization of an arrest warrant"); *People v. Moreno,* 176 Colo 488, 491 P2d 575 (1971); *Commonwealth v. LeBlanc,* 373 Mass 478, 367 NE2d 846, 850 (1977); *Commonwealth v. Williams,* 483 Pa 293, 396 A2d 1177, 1180 (1978)("police should have obtained an arrest warrant").

before they may enter the premises to execute the arrest warrant.[7]

When we held in *Olson* that the Fourth Amendment applies when police enter private premises to effect an arrest, we essentially held that, absent exigent circumstances, arrests on private premises conducted outside the judicial process are *per se* unreasonable. *See State v. Peller,* 287 Or at 260. *Cf. Katz v. United States,* 389 US 347, 357, 88 S Ct 507, 19 L Ed2d 576 (1967). The extent to which a judicial officer must be involved in approving an arrest on private premises, however, involves our consideration of the governmental interests in effective law enforcement. *See, e.g., United States v. Watson, supra,* 423 US 411, 417; *id.* at 431-32 (Powell, J., concurring). As the United States Supreme Court has explained,

> "Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement." *Gerstein v. Pugh, supra,* 420 US at 113.

Judicial scrutiny of probable cause to search every place where the suspect may be located would unduly hamper the police in the performance of their duties. Apprehending a criminal suspect is not the same as searching for evidence or contraband. A suspect will not stay in one place; he will attempt to avoid capture. And this inherent mobility to escape often presents unforeseeable dangers that necessitate swift police

---

[7] The legal commentators are also divided over the question whether a search warrant is necessary prior to the entry of private premises to execute an arrest warrant. *See, e.g.* 2 LaFave, Search and Seizure 378-86 (1978); Rotenberg & Tanzer, *Searching for the Person to be Seized,* 35 Ohio St L J 56, 65-71 (1974); Note, *Warrantless Entry to Arrest: A Practical Solution to a Fourth Amendment Problem,* 1978 U Ill Law Forum 655, 673-76; Comment, *The Constitutionality of Warrantless Home Arrests,* 78 Colum L Rev 1550, 1566-67 (1978); Comment, *Forcible Entry to Effect a Warrantless Arrest—The Eroding Protection of the Castle,* 82 Dick L R 167 (1977); Comment, *Watson and Santana: Death Knell for Arrest Warrants?,* 28 Syracuse L Rev 787 (1977); Note, *The Neglected Fourth Amendment Problem in Arrest Entries,* 23 Stan L Rev 995 (1971).

action. *See, e.g., United States v. McKinney, supra.* [8]
The constitutional requirement of reasonableness does
not mandate that we handicap police apprehension
efforts by requiring officers to wait at the threshold
while the suspect hides or flees or by requiring officers
to return for a warrant to search each time the suspect
flees to hide in another house or apartment. As one
court recently explained, in holding that police with a
valid arrest warrant and probable cause to believe the
suspect is within may enter private premises to exe-
cute the warrant:

> "We think this rule sound. On the one hand,
> common sense dictates that law officers, in possession
> of a valid arrest warrant, hold authority to take
> reasonable steps to execute the warrant. * * * A
> contrary rule [requiring a search warrant] would
> unduly hamper law officers in performance of their
> duties. Indeed, it would be anomalous and a senseless
> restraint upon police to permit them, when they hold
> a search warrant, to enter a residence by breaking
> down the door after they hear sounds of escape
> emanating from inside, but require them, for lack of
> a search warrant, to stand helplessly at the threshold
> while a suspect named in an arrest warrant secretes
> himself about the house or flees. * * * On the other
> hand, the requirement of probable cause to believe
> that the suspect is within prevents the police from
> indiscriminately entering and searching any home
> where they hope an accused may be. * * *." *Common-
> wealth v. Terebieniec, supra,* 408 A2d at 1126.

We believe that constitutional rights will be pro-
tected as long as any arrest on private premises is
supported by the judicial authorization of an arrest

---

[8] The *McKinney* court reasoned that the issuance of an arrest warrant
is itself an exceptional circumstance obviating the need for a search
warrant. The court said:

> " * * * An arrest warrant is validly issued only when a magistrate
> is convinced that there is probable cause to believe that the named
> party has committed an offense. This determination, together with the
> inherent mobility of the suspect, would justify a search for the suspect
> provided the authorities reasonably believe he could be found on the
> premises searched. * * *" 379 F2d 263

[401]

warrant and the police officer's probable cause to believe that the arrestee is within the premises. *United States v. Cravero, supra; United States v. Brown, supra; United States v. McKinney, supra.* The reasonableness of the officer's judgment is, of course, subject to review. Furthermore, the entry pursuant to an arrest warrant is valid only for the purpose of making the arrest and not for the purpose of conducting a general search. *See United States v. Cravero,* 545 F2d at 421 n. 2. In the instant case, the only "evidence" seized by the police was Sandra Jordan—the person named in the arrest warrant.

Accordingly, we hold that police officers may enter private premises to make an arrest if they have a valid arrest warrant and probable cause to believe that the subject of the warrant is present on the premises. Neither the fourth amendment to the United States Constitution nor article I, section 9, of the Oregon Constitution requires that police officers also obtain a search warrant.

### III

The Court of Appeals held that the police officers clearly had probable cause to believe that Sandra Jordan, the person named in the arrest warrant, was on the premises. The defendant does not contend that the police never had probable cause to believe that Sandra Jordan was within the house, but argues that once the police arrested defendant, believing she was Sandra Jordan, "[s]ome additional fact, indicating that defendant might not be Sandra, was necessary to a finding of probable cause." Assuming this to be the case, we do not agree with defendant's contention that after her arrest no additional facts had been adduced supporting probable cause to believe Sandra was still in the house. During the suppression hearing, Officer Ault testified that after taking the defendant into custody,

" * * * I then got in the police car and observed a mug shot of Sandra Jordan that we were looking for

[402]

and was not sure still if the gal we had in custody was the right one. So I advised the other officers to go back up to the house."

This photographic comparison was sufficient to lead a reasonably prudent person to believe that the defendant was not Sandra Jordan and that Sandra was still on the premises.

The defendant argues that where an arrest warrant exists for a suspect, only one person is the suspect and thus when one person is arrested, whatever probable cause there is *to look for* the suspect is used up. The fact that there is a warrant for one person's arrest, however, should make no difference as long as there is, in fact, probable cause for both the first arrest and the subsequent search.

In the present case, the officers had probable cause to believe that Sandra Jordan was in the house, but they did not know for certain which person in the house was Sandra Jordan. They also did not know that the defendant and Sandra Jordan were sisters. Probable cause may justify the arrest of more than one person if circumstances exist that would lead a reasonably prudent person to believe that each suspect could be the person named in the arrest warrant. The defendant's presence at the house and her use of the name Juanita Adams were circumstances that supported the reasonable belief that defendant was Sandra Jordan. However, the police officer's uncertainty regarding defendant's resemblance to the photograph of Sandra Jordan, her sister, supported a reasonable belief that Sandra Jordan was still in the house. The Court of Appeals, therefore, did not err in holding that the police officers had probable cause to enter the defendant's premises.

Affirmed.

[403]

**LINDE, J.,** dissenting.

If the Court's opinion is taken at face value, the majority appears prepared to hold that any arrest warrant, no matter for how trivial an offense, authorizes a police officer to force entry into any premises, no matter whose, to search for the person named in the warrant, if he has probable cause to believe that the person may be found there. Such a rule does not give the people of this state the protection against unreasonable searches that they sought to guarantee themselves in the State's Bill of Rights. Or Const art I, sec 9.[1] Moreover, it is logically irreconcilable with our decision of last year that only under exigent circumstances may an officer force entry when he has perfectly valid reasons to make an arrest, though no arrest warrant. *State v. Olson,* 287 Or 157, 598 P2d 670 (1979) and *State v. Peller,* 287 Or 255, 598 P2d 684 (1979). I therefore dissent.

*State v. Olson, supra,* held that police officers may not enter a private home without a warrant to make an arrest merely upon probable cause to believe that the person they seek is in the home, except in "hot pursuit" or when there are exigent circumstances that require action before a warrant can be obtained. Similarly, *State v. Peller, supra,* held that although a police officer may have had probable cause to arrest the defendant and to believe he was within the residence, he could not without a warrant enter a residence to make the arrest unless "the exigencies of the situation made that course imperative." 287 Or at 262. These decisions established that although officers are otherwise in a position to make a valid arrest, an unconsented entry into private living quarters invades a sepa-

---

[1] Or Const art I, § 9:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

rate constitutional right, a right which may be invaded without prior judicial authorization only when exigent circumstances preclude such prior authorization.

The only distinction between the present facts and those in *Olson* and *Peller* is that there the officers themselves had valid grounds to arrest the person they sought, whereas in this case a warrant had been issued for Sandra Jordan's arrest. This distinction cannot explain a different result as to forcing entry into someone's residence without exigent circumstances. As far as a forced entry into private living quarters is concerned, one or the other origin of the officer's authority to make the arrest is a distinction without a difference.

A police officer may arrest a person on his own authority when the officer has probable cause to believe either that the person has committed a felony or a major misdemeanor or traffic offense, or that the person has committed any other offense in the officer's presence. ORS 133.310(1).[2] This authority depends on no special exigency when the arrest occurs in public or in a place where the officer has a right to be. If probable cause is found to exist, the arrest is as valid as an arrest under a warrant. Yet the objective of arresting someone whom the officer has unquestioned authority to arrest, even someone whom he may personally have seen committing a felony, does not alone allow him to enter a residence for the purpose. He needs the authorization of a judge or circumstances too urgent to await such an authorization. *State v. Olson, supra, State v. Peller, supra.*

[2] ORS 133.310(1):

"(1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"(a) A felony, a Class A misdemeanor, an unclassified offense for which the maximum penalty allowed by law is equal to or greater than the maximum penalty allowed for a Class A misdemeanor, or a major traffic offense as defined in subsection (5) of ORS 484.010; or

"(b) Any other offense in the officer's presence."

[405]

The existence of an arrest warrant as such, without more, adds nothing to the underlying premise for making an arrest. Of course it relieves the officer of personal responsibility for the decision to arrest, since he need not know anything about the reasons for it. But all that the issuing magistrate has determined in signing an unadorned arrest warrant is that he has been presented *ex parte* with evidence, frequently hearsay, that suffices to show probable cause for an arrest. Often he will have less reliable knowledge of the alleged grounds than an officer acting under ORS 133.310(1). Although the law encourages the use of citations in lieu of arrest, the warrant may be issued for a misdemeanor or a mere violation. ORS 133.110.[3] Thus, when a magistrate signs an unadorned warrant of arrest, and of arrest only, all he has considered is whether there is sufficient evidence of probable cause to take control of the named individual and bring her before the nearest magistrate. Unless the matter is brought to his attention, he has not made a judicial determination that the urgency of arresting this individual requires or justifies forcing entry into private quarters to search for her, nor whose private quarters shall be so entered and searched.

Yet it is exactly this justification that, under *Olson* and *Peller,* must have the advance approval of a magistrate unless exigent circumstances forbid. The existence of probable cause to make the arrest is not the issue as far as entry is concerned. *Olson* and *Peller* were decided on the premise that the officers had adequate cause to make a valid arrest. The existence of an arrest warrant adds nothing new to this.

---

[3] ORS 133.110:

"If the magistrate is satisfied that there is probable cause to believe that the person charged has committed the offense complained of, he shall issue a warrant of arrest. However, on a misdemeanor or violation charge or on a felony charge which in the discretion of the court may be considered a misdemeanor charge at the time sentence is imposed he may authorize a peace officer to issue and serve a citation as provided in ORS 133.055."

The majority expresses concern about imposing a "handicap" on police officers seeking to make an arrest. But the requirement of a prior judicial authorization in order to protect the private householder is no more of a handicap in this case than in *Olson* and *Peller*. The need to search a dwelling in order to make an arrest is exactly as great for a valid warrantless arrest as for one based on the existence of a warrant. If anything, the practical necessity often will seem greater when the officer has good grounds to arrest upon his own initiative without awaiting a warrant; yet unless the circumstances are exigent, he may not force entry. Again, the majority says that the owner or occupant of the dwelling is protected by the officer's reasonable belief that the person to be arrested is on the premises, and further that the reasonableness of this belief is subject to judicial review. That, too, would be the same with or without an arrest warrant. But beyond this, the argument strikes to the core of the requirement of a warrant authorizing the entry, for the whole point of the requirement is that judicial responsibility be exercised before the entry, not in some hypothetical later proceeding.

The majority does not specify the time and the form of the judicial review which it invokes as the safeguard. If it means that if the person named in the warrant is found, and if evidence is seized, and if he is prosecuted, and if the search is then found to have been improper, that person may succeed in having the evidence suppressed, then the majority puts the cart before the horse. Legal guarantees against unjustified searches or seizures are not to be measured on the assumption that the search turns up an offender or evidence of an offense. It cannot be emphasized too often that the function and effectiveness of these guarantees must be judged from the standpoint of an ordinary, lawabiding person whose living quarters have been forcibly entered and searched, over her objection or in her absence. If the search proves to be

mistaken, must she nevertheless acknowledge the entry and search to be no invasion of her rights?

That is the criterion of a legal entry and search; yet judicial scrutiny upon a motion to suppress is irrelevant when the police found nothing.[4] Theoretically such a person can test the issue by an action in tort or under the civil rights laws.[5] But the point of the legal guarantees, and the measure of their effectiveness, is to provide the security of prior rather than subsequent judicial scrutiny except in an emergency. The essence of the protection is precisely that the right of the people to be secure in their homes is not to rest only upon the reasonable belief of police officers that they have probable cause to force entry. For such a measure of security, the bills of rights would not need an article I, section 9 or a 4th amendment; common trespass law would do. Instead, the bills of rights provided for judicial warrants in advance of entry to search.

It must not be forgotten that police officers may have probable cause to believe that a person named in an arrest warrant may be found in one of several places. The person is seen entering an apartment house. May officers insist on entry into each apartment to look for him, or force entry without exigent circumstances when no one is at home? An offender is reasonably believed to be hiding out in an isolated colony of private vacation homes or condominiums. May officers break into one after another without prior judicial authorization? It will often be natural to look for a person sought under a warrant in the homes of his parents, or his wife, or other relatives or friends. Are all of them subject to having their homes entered and searched, in their absence or over their protests, without a magistrate's prior determination that this should be done? The position urged by the state

---

[4] Nor is the claim that an officer's belief was unreasonable often likely to be persuasive when the officer in fact found the person to be arrested.

[5] *See* ORS 30.260 - 30.300. A claim under 42 USC § 1983 is also a tort under ORS 30.265.

would extend to all these situations, and regardless whether the grounds for the arrest warrant are as grave as a homicide or as trivial as unpaid traffic fines. In *State v. Bishop,* also decided today, the police forced entry into the home of defendant's mother. What they had was a warrant for the arrest for her son for not paying a number of traffic fines. The rule stated by the majority in the present case must be tested against the entirely possible hypothesis that Bishop was not at his mother's home. When the law provided for issuing arrest warrants for traffic offenders, did it contemplate that such warrants authorized a search for the offender in someone else's home, in the occupant's absence or over her protests?[6]

In order to provide the protection of article I, section 9, it does not follow that the warrant must be denominated a "search warrant." Warrants to search for a person "for whose arrest there is probable cause or who is unlawfully held in concealment" indeed are specifically authorized under the search warrant statutes. ORS 133.535(4).[7] Often a magistrate's grant of authority to search for a person in a specific dwelling, such as the residence in the present case, would reasonably follow this statute. But the statutory search warrant need not be the exclusive form of authorization. ORS 133.235(5)[8] shows that the legislature did not intend it to be. Nor does the constitutional

---

[6] This issue was not reached in *State v. Bishop* because it had not been raised below.

[7] ORS 133.535 states:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

. . . .

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

[8] ORS 133.235(5) states:

"In order to make an arrest, a peace officer may enter premises in which he has probable cause to believe the person to be arrested to be present."

[409]

guarantee put a label on the type of warrant: It demands only that the warrant describe the place to be searched as well as the person to be seized. As Judge Duniway recently wrote for the federal Ninth Circuit on this issue: "We think, however, that the distinction between a search warrant and an arrest warrant is an artificial one. The Fourth Amendment makes no such distinction." *United States v. Prescott,* 581 F2d 1343, 1350 (1978). But in the presence of our own constitutional guarantee, Oregon citizens should not have to turn to federal law for protection.

Thus the state's concern about a "two warrants" requirement to make an arrest is exaggerated. For constitutional purposes it is immaterial whether the judicial authorization to enter is contained in a separate document entitled a "search warrant" or in the same warrant authorizing the arrest. If officers who seek an arrest warrant want authority to enter and look for the suspected offender at a particular residence, they may ask to have this included in the warrant upon showing probable cause to expect the person to be found there. If they can show probable cause to search in more than one place, this too can be included in the initial warrant. If the information is acquired after the initial arrest warrant is issued, it can be amended or a new one issued. The constitutional warrant requirement is not a matter of forms. Its crux is that a magistrate has made a decision to authorize an unconsented entry and search, upon his independent judgment that the importance of making the arrest and the probability of finding the person to be arrested justify it. Only such a requirement can maintain judicial control of the kind of simultaneous or seriatim searches of private quarters in each of which the suspected offender might reasonably be found.

Other courts have discussed the circumstances that may permit an unconsented entry to make an arrest. These include (1) the nature and gravity of the offense

for which the person is to be arrested, (2) the officers' knowledge that the suspect is armed and (3) that delay would pose a danger to others, (4) the strength of the reasons to believe that the person is in the premises being entered, (5) the likelihood that the person will escape if the entry is delayed, (6) the circumstance that the entry, though unconsented, is made peaceably rather than forced. *See, e.g., Nilson v. State,* 272 Md 179, 321 A2d 301 (1974), quoting *Dorman v. United States,* 435 F2d 385 (1970); *State v. Johnson,* 232 NW2d 477 (Iowa 1975). A combination of these circumstances may create an exigency justifying action before a warrant can be obtained, satisfying the rule of *State v. Olson* and *State v. Peller* discussed above. However, no such exigent circumstances are claimed to exist in this case. The warrant was to arrest Sandra Jordan for failure to appear on another charge. There was no apparent urgency to make the arrest. There is no claim that she was armed or dangerous or that, assuming she was in the house, she could have fled unnoticed while the officers awaited a further warrant. If the bare existence of an arrest warrant authorized this forced entry and search, it would authorize any forced entry and search upon probable cause anywhere. Such a rule cannot be reconciled with the rule of *Olson* and *Peller, supra.* Accordingly, the entry and search went beyond the officers' authority and its fruits should have been suppressed.

Denecke, C. J., and Lent, J., join in this dissent.