275 N.J. Super. 585 (1994)
646 A.2d 1126
IN THE MATTER OF KENNETH DRAKE, APPELLANT,
v.
COUNTY OF ESSEX, ESSEX COUNTY JAIL AND NEW JERSEY DEPARTMENT OF PERSONNEL, MERIT SYSTEM BOARD, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1994.
Decided August 23, 1994.
*586 Before Judges SKILLMAN, KESTIN and WEFING.
Leon B. Savetsky argued the cause for appellant (Loccke & Correia, attorneys; Mr. Savetsky, of counsel and on the brief).
*587 June K. Forrest, Senior Deputy Attorney General, argued the cause for respondent Merit System Board (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Forrest, on the brief).
John T. Lyons, Jr., Assistant County Counsel, argued the cause for respondent Essex County (Stephen J. Edelstein, Essex County Counsel, attorney; Mr. Lyons, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is an appeal from a final decision of the Merit System Board sustaining appellant's removal from his position as a correction officer in the Essex County Jail. The appeal turns on whether the odor of marijuana detected in a bathroom to which a limited number of jail employees had access was sufficient to establish the "individualized reasonable suspicion" of drug use required to subject those employees to drug testing.
Appellant's removal was based upon policies and procedures adopted by the Essex County Department of Public Safety, which provide that "[a]ny employee who tests positive for illicit drugs or refuses to produce a sample when so ordered will be terminated from employment." Appellant was one of four officers assigned to perform guard duties on the eighth floor of the jail on February 17, 1990. This assignment gave appellant access to a bathroom adjoining the sub-control room on this floor. The only other persons with access to this bathroom were the other guards on duty and on occasion nurses and workmen assigned to perform work on that floor. A confidential informant detected the odor of marijuana in the bathroom during appellant's shift and reported this information to supervisory authorities at the jail. After the warden and an internal affairs investigator personally interviewed the confidential informant to verify the reliability of this information,[1] *588 the warden ordered the four correction officers who had access to the bathroom when the odor of marijuana was detected to provide urine samples for drug testing. The warden's order was made pursuant to a section of the Department's policies and procedures which states that "[a] urine sample will be ordered from a Correctional employee ... when it has been determined that individualized reasonable suspicion exists to believe that an employee may be under the influence of an illegal drug." Appellant's urine sample tested positive for marijuana and cocaine.
Based on these drug test results, Essex County brought disciplinary charges against appellant which resulted in his removal. Appellant appealed his removal to the Merit System Board, which referred the matter to the Office of Administrative Law for a hearing. An Administrative Law Judge concluded that Essex County had failed to establish "an individualized reasonable suspicion directed at appellant" because the warden's suspicion of drug use "was not specific to any individual officer, but rather was directed to all officers who had access to [the bathroom adjoining the sub-control room]." Consequently, the Administrative Law Judge recommended that the charges against appellant be dismissed.
However, the Merit System Board rejected this recommended decision, concluding that "[a]s only four persons had access to the bathroom at that time, the probability was great that one or more of those persons was responsible for the odor detected in the bathroom," and thus "the suspicion of drug usage was sufficiently individual to require each of the four officers to undergo drug testing." We agree with this reasoning and therefore affirm the *589 Merit System Board's final decision sustaining appellant's removal.
A public agency is required to abide by its own policies and procedures regarding the drug testing of its employees. See Caldwell v. State Dep't of Corrections, supra, 250 N.J. Super. at 609, 595 A.2d 1118 ("Given that ... petitioners were informed by and acknowledged receipt of the procedures which clearly stated that they would only be ordered to submit to the test if the Commissioner found there was a `reasonable individualized suspicion,' we view that standard as the applicable one.") Therefore, even assuming that a correctional facility could authorize random drug testing of its staff, see Skinner v. Railway Labor Execs. Ass'n, 489 U.S. 602, 626-33, 109 S.Ct. 1402, 1418-22, 103 L.Ed.2d 639, 665-70 (1989); American Fed'n of Gov't Employees, AFL-CIO v. Roberts, 9 F.3d 1464, 1467-68 (9th Cir.1993); McDonell v. Hunter, 809 F.2d 1302, 1307-08 (8th Cir.1987), the operation of the Essex County Jail is governed by its own policies and procedures, which mandate drug testing only when there is "individualized reasonable suspicion" of an employee's drug use.
Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989); accord Rawlings v. Police Dep't of Jersey City, 133 N.J. 182, 191, 627 A.2d 602 (1993). In fact, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990); accord State in the Interest of H.B., 75 N.J. 243, 251, 381 A.2d 759 (1977). Moreover, "[t]he concept of reasonable suspicion, like probable cause, is not `readily, or even usefully, reduced to a neat set of legal rules.'" United States v. Sokolow, supra, 490 U.S. at 7, 109 S.Ct. at 1585; *590 104 L.Ed.2d at 10 (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544 (1983)). Rather, it requires an evaluation of "`the totality of the circumstances  the whole picture.'" Id. at 8, 109 S.Ct. at 1585, 104 L.Ed.2d at 10 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)).
Since reasonable suspicion requires not only "considerably less" than "proof by a preponderance of the evidence," but even less than probable cause, it does not require evidence which focuses only upon a single individual. Instead, reasonable suspicion may be established by evidence which points to the guilt of at least one of a discrete group of individuals. See United States v. Fisher, 702 F.2d 372, 375-77 (2d Cir.1983) (reasonable suspicion to stop four African-American males to investigate a robbery committed by three persons matching their general physical characteristics); Filmon v. State, 336 So.2d 586, 591 (Fla. 1976) (five individuals occupying two automobiles involved in a fatal accident all could be required to submit to blood-alcohol testing because police had "reasonable cause to believe that one or more of that limited group ... had been driving a motor vehicle ... while under the influence of alcoholic beverages"), cert. denied, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977). Indeed, probable cause to arrest may be established even though the evidence does not focus exclusively upon a single suspect. See State v. Jordan, 36 Or. App. 45, 583 P.2d 1161, 1163-64 (1978) (probable cause to arrest two women found at the residence of suspected female fugitive), aff'd, 288 Or. 391, 605 P.2d 646, cert. denied, 449 U.S. 846, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); Commonwealth v. Bunch, 329 Pa.Super. 101, 477 A.2d 1372, 1378-82 (1984) (evidence that three of four individuals in a car had committed robbery provided the probable cause required to justify the arrest of all four occupants); State v. Mitchell, 167 Wis.2d 672, 482 N.W.2d 364, 368-69 (1992) (smell of marijuana smoke from a parked automobile gave rise to probable cause to believe that the two occupants were *591 using drugs); see generally, 1 Wayne R. LaFave, Law of Search & Seizure, § 3.2(e) at 587-94 (2d ed. 1987).
Appellant relies heavily upon the word "individualized" in the phrase "individualized reasonable suspicion," and argues that in order to compel him to provide a urine sample, the warden had to possess incriminating information which was specifically directed only at him. If this argument were accepted, it would mean that the warden would have been prohibited from requiring appellant to submit a urine sample for drug testing even if only appellant and one other correctional officer had exclusive access to the bathroom. However, the term "individualized," like "particularized," is used in the law of search and seizure simply to refer to evidence of wrongdoing at a particular time and place, as distinguished from suspicion based on general group characteristics. Thus, in Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968), the Court indicated that reasonable suspicion consists of not merely an "inchoate and unparticularized suspicion or `hunch,'" but rather "specific reasonable inferences ... draw[n] from the facts." Similarly, in United States v. Cortez, supra, 449 U.S. at 695, 101 S.Ct. at 417-18, 66 L.Ed.2d at 629, the Court stated that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Accord State v. Davis, 104 N.J. 490, 504, 517 A.2d 859 (1986).
Applying this requirement of "particularized suspicion," the courts have consistently held that a person's membership in a group commonly thought to be suspicious is insufficient by itself to establish reasonable suspicion. See, e.g., Reid v. Georgia, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894 (1980) (drug-profile alone does not justify reasonable suspicion); United States v. Brignoni-Ponce, 422 U.S. 873, 886-87, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607, 619-20 (1975) (ethnicity alone is insufficient); Buffkins v. City of Omaha, 922 F.2d 465, 470 (8th Cir.1990) (race alone is insufficient), cert. denied, ___ U.S. ___, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991); see also Brown v. Texas, 443 U.S. 47, 52, 99 *592 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362-63 (1979). However, the principle that reasonable suspicion may not be predicated solely upon an individual's group membership does not mean that suspicion is reasonable only if it focuses exclusively upon a single individual.
Appellant relies upon cases which state that the "reasonable suspicion standard ... requires individualized suspicion, specifically directed to the person who is targeted for the ... search." See, e.g., Cochrane v. Quattrocchi, 949 F.2d 11, 14 (1st Cir.1991) (quoting Hunter v. Augur, 672 F.2d 668, 675 (8th Cir.1982)), cert. denied, ___ U.S. ___, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). However, these cases either involved no individualized suspicion at all or purported findings of individualized suspicion which the trier of fact could have found to have been pretextual. One such case invalidated a prison rule requiring every visitor to a prison to submit to a body cavity strip search "without any predicate requirement of individualized suspicion or showing of special and highly unusual institutional need." Blackburn v. Snow, 771 F.2d 556, 562 (1st Cir.1985). Another invalidated a correctional facility's policy of conducting random strip searches and body searches of all its correction officers. Security & Law Enforcement Employees, Dist. Council 82 v. Carey, 737 F.2d 187, 209-10 (2nd Cir.1984). Yet another held that information from a confidential informant indicating that one specifically identified member of an airplane flight crew was transporting narcotics did not create the reasonable suspicion required to conduct a strip search of the other five members of the crew. United States v. Afanador, 567 F.2d 1325, 1330-31 (5th Cir.1978). Similarly, in Thorne v. Jones, 765 F.2d 1270, 1277 (5th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986), the court concluded that reasonable suspicion that an inmate's mother had smuggled drugs into the prison did not provide the reasonable suspicion required to justify a strip search of the inmate's father when he visited the prison. Two other cases involved searches which were purportedly based on information obtained from reliable informants, but there was evidence that the searches were conducted for retaliatory *593 reasons. Consequently, the courts concluded that the triers of fact should have had the opportunity to determine the actual reason for the searches. Cochrane v. Quattrocchi, supra, 949 F.2d at 13-14; Ford v. Dowd, 931 F.2d 1286, 1292-94 (8th Cir.1991). Therefore, none of the cases upon which appellant relies hold that the requirement that reasonable suspicion be "specifically directed to the person who is targeted for the search" means that suspicion must focus exclusively upon a single individual.
We are satisfied that the warden had a sufficiently "individualized reasonable suspicion" of appellant's drug use, even though the evidence he relied upon was specifically directed not only at appellant but also three other correction officers. Although the odor of marijuana in the bathroom did not point ineluctably to the use of drugs by any single individual, it constituted strong evidence that at least one of the correctional officers had been smoking marijuana while on duty and thus provided reasonable suspicion as to each of the four. Moreover, although there was testimony that nurses and workmen were occasionally present in the eighth floor subcontrol room, appellant presented no evidence suggesting that anyone other than the four guards was there around the time the odor of marijuana was detected. In any event, even if a nurse or workman had also had access to the bathroom at that time, the special role which correction officers play in the management of a prison, particularly their regular access to inmates, would have justified the warden's decision to require only these officers to submit to drug testing. Cf. McDonell v. Hunter, supra, 809 F.2d at 1308 ("[U]rinalysis may be performed uniformly or by systematic random selection of those employees who have regular contact with the prisoners on a day-to-day basis in medium or maximum security prisons.").
Affirmed.
NOTES
[1] The warden declined to reveal the identity of the informant out of concern for that person's safety. The Administrative Law Judge denied appellant's request to direct the warden to answer questions which could have resulted in disclosure of the informant's identity. See former Evid.R. 36 (presently N.J.R.E. 516); Grodjesk v. Faghani, 104 N.J. 89, 96-101, 514 A.2d 1328 (1986); cf. Caldwell v. State Dep't of Corrections, 250 N.J. Super. 592, 615, 595 A.2d 1118 (App.Div. 1991). Appellant does not present any argument on appeal relating to the non-disclosure of the informant's identity.