THE STATE OF OHIO, APPELLEE, *v.* CLARK ET AL., APPELLANTS.

[Cite as State v. Clark (1974), 40 Ohio App. 2d 365.]

(No. 31483—Decided May 3, 1974.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Frederick L. Ferrell,* for appellant.

KRENZLER, J. Assignments of error one, two, three, four, five, six and seven are not well taken, and the judgment is affirmed.

We agree with Judge Day's decision, which follows this majority opinion, in overruling assignments of error one, five and six, and that part of seven which claims the defendants were not proven guilty beyond a reasonable doubt. We do not concur in his decision in regard to assignments of error two,[1] three and four. The lack of concurrence in three and four results in our disagreement also with his conclusion that these defendants were denied a fair trial and due process as claimed in part of assignment of error seven.

Assignments of error three and four are not well taken and warrant some explanation of our conclusion with respect to them.

After defense witness Walsh testified on direct examination he had an unpleasant exchange of words with Assistant County Prosecutor Lazzaro. This dialogue took place in the hall of the courthouse during a recess and out of the

---

[1] Judge Day's opinion has adequately stated the basis for our position with respect to assignment of error number two and we need not repeat it.

presence of the jury. Mr. Lazzaro threatened Mr. Walsh, and a summary of this exchange is contained in Judge Day's opinion.

Following the confrontation between Walsh and Lazzaro, the parties returned to the courtroom wherein defense counsel made a motion for a mistrial based on the foregoing event. A voir dire hearing was held by the court out of the presence of the jury and Walsh confirmed that the altercation took place and that he was threatened by Lazzaro but that it would not affect his testimony as to the statements he would make or his manner of testifying.

The trial court, in effect, overruled the motion for a mistrial and permitted Walsh to continue his testimony when the trial resumed.

In separate proceedings out of the hearing of the jury the trial court found Lazzaro guilty of contempt for conduct unbecoming a lawyer and fined him $50.

The question to be resolved is whether the out of court confrontation between defense witness Walsh and Assistant County Prosecutor Lazzaro prejudiced the defendants' right to a fair trial. While we abhor the tactics of the County Prosecutor, the penalty for his conduct was properly handled by the trial court in contempt proceedings which were separate and apart from the defendants' trial and out of the presence of the jury.

We are not prepared to say that such out of court conduct is prejudicial to a defendant's right to a fair trial as a matter of law. The answer to such conduct unbecoming a lawyer is by separate contempt proceedings which was done in this case, rather than by automatically declaring a mistrial. If the record did show that the witness was affected to such an extent that his testimony would be different as to form and substance, and that the defendant would be denied his right to a fair trial and be prejudiced by the Assistant County Prosecutor's actions toward the witness, the trial court should have declared a mistrial.

However, upon reviewing the entire transcript of testimony, we find that the entire unpleasant, out of court episode between Walsh and Lazzaro did not affect the de-

fendants' right to a fair trial and did not prejudice the defendants, and that the third assignment of error is not well taken.

The fourth assignment of error deals with the Prosecutor's conduct during closing arguments, in which it is charged that he appealed to the passion and prejudice of the jurors and affected the defendants' right to a fair trial.

It is noted that the trial court advised the jury that arguments of counsel are not to be considered as evidence. It is well recognized that in many cases counsel for the defense and counsel for the State become enthusiastic and exuberant in expressing their views of the evidence. But unless such arguments are considered as appealing to the passion and prejudice of the jury to such an extent that it will affect the defendants' right to a fair trial, a reviewing court will not reverse on this basis.

We have reviewed the transcript of the Assistant Prosecutor's closing argument and conclude that it did not appeal to the passion and prejudice of the jury and did not affect the defendants' right to a fair trial and could not be considered prejudicial error. The fourth assignment of error is also not well taken.[2]

*Judgment affirmed.*

Silbert, P. J., concurs.

Day, J., concurring in part and dissenting in part. This is an appeal by three defendants, hereafter called appellants, from a conviction of violation of R. C. 2901.23, "Intentional Shooting". The appellants assign seven errors.[3]

---

[2] Actually, Judge Day comes to the same conclusion but for reasons founded on failure to preserve the claimed error. The majority finds no substantive error on this point in this case.

[3] These are:

"I. The trial court erred in admitting over the objection of defense counsel evidence obtained as result of an illegal search and seizure, where the evidence disclosed that appellants' constitutionally guaranteed right against unreasonable search and seizure were violated in that there was an invalid forcible entry into the premises occupied

The majority finds none of the assignments well taken. The majority affirms the conviction. I would find the second, third, and fourth assignments well taken and the seventh well taken in part. I would reverse. The basis of the disposition in this case is of such gravity that it warrants a formal opinion. Judge Krenzler has addressed the third and fourth assignments for the majority.[4] Except where there are contrary indications, the present opinion is the opinion of a unanimous court.

## I.

In this case, upon complaint made by a local merchant, peace warrants were issued by the Cleveland Municipal Court for the arrest of Appellant Curtiss Johnson and one

by the defendants, and where the evidence disclosed that the peace warrant was defective for want of compliance with the applicable Ohio statutes.

"II. The trial court erred in admitting testimony by police officers concerning alleged confession of defendant Fred Clark where there was no showing that under the circumstances the alleged statements were voluntary or that the trustworthiness of the evidence satisfied legal standards.

"III. The trial court erred in denying a defense motion for mistrial based on misconduct of the prosecuting attorney toward a defense witness which was highly prejudicial and constituted reversible error.

"IV. The misconduct of the prosecuting attorney by improper statements appealing to the passion and prejudice of the jury were prejudicial to the defendants right to a fair trial and constituted reversible error.

"V. The trial court erred in refusing to admit door from the premises into evidence.

"VI. The trial court erred in refusing to admit certain photographs of the interior of the premises, taken on or about the time of the shooting in question, where the proper foundation for admission had been laid and where the question of the location of bullet holes was so essential to defendants'-appellants' case that the refusal manifestly denied the defendants appellants a fair opportunity to defend themselves.

"VII. The trial court erred in denying a defense motion for a judgment of acquittal and a directed verdict of acquittal on the grounds that the State had failed to prove the defendants guilty beyond a reasonable doubt. The defendants were deprived of the right to a fair trial, and they were denied their constitutional rights of due process."

[4]See Judge Krenzler's majority opinion. I dissent from that opinion and from those syllabi which reflect it, i. e., Syllabi 3 and 6.

Robert Hall. In an attempt to serve the warrants, the police proceeded to an address on Rawlings Avenue, the so-called headquarters of the Black Panthers and the National Committee to Combat Facism. A gun battle broke out as soon as the police attempted to gain admission the house. This shooting resulted in the indictments leading to these convictions.

## II.

Appellants complain that evidence obtained after forcible entry into premises occupied by them was illegally obtained. This position is grounded entirely upon a claimed vice in the method of entry and a defective peace warrant (see Assignment of Error No. I, fn. 1). However, the policemen entering had peace warrants, the complaint upon which the peace warrants were issued conformed with all the requirements of R. C. 2933.02, and the complaint was made in writing and was sworn to before a magistrate, as defined in R. C. 2931.01. Moreover, the complainant stated that he had just cause to fear that Appellants Johnson and Robert Hall would commit an offense against his person, property, and child.[5]

The magistrate before whom the complaint was made then issued the peace warrants commanding the arrests of the named defendants.

The police, in an attempt to serve the warrants and make the arrests, knocked on the door of the apartment where the defendants were believed to be. They identified themselves as police officers and said they had warrants for the defendants' arrest (Tr. 235). No response was given to the demand by the police to open the door, but noises were heard inside. The police proceeded to break in the door. At this point the shooting started.

R. C. 2935.12 authorizes the police to break down a door if they are refused admission, after giving notice of their intention to make an arrest. Before R. C. 2935.12 becomes applicable, the police must be either acting pursuant

---

[5]The complainant was somewhat confused but it seems reasonably clear that he signed complaints (Tr. 27, but cf. 108-109, see State's Exs. 2-5).

to a warrant for the arrest of a person charged with an offense, a search warrant, or they must be making an arrest.

While no offense was charged under the peace warrant, it did call for the police to arrest the named defendants. The police, were therefore, in the process of making a valid arrest, and as a consequence, any reasonable search incident to this valid arrest was proper. In addition, the discovery of evidence made pursuant to the execution of the warrant is admissible, *State* v. *Jemison* (1968), 14 Ohio St. 2d 47, 52-53. Assignment of Error No. I lacks merit.

### III.

Appellant Clark was interrogated while in the emergency room for treatment of gun shot wounds. It is argued that he was in "great pain" and that this was sufficient to establish that his "will was overborn by the circumstances of the interrogation and [that he] would have remained silent but for the improper influences on him" (Appellant's Brief, p. 17).

However, the record does not indicate that the defendant's statement was in any way coerced. Unlike the situatios in *Lynumn* v. *Illinois* (1963), 372 U. S. 528, 9 L. Ed. 2d 922,[6] or *Beecher* v. *Alabama* (1967), 389 U. S. 35, 19 L. Ed. 2d 35,[7] there were no promises or threats made to Clark. Nevertheless, the legality of the admissions in the instant case becomes a factor when measured by the standards of admissibility in *Miranda* v. *Arizona* (1966), 384 U. S. 436. The State did not prove the statements used against Defendant Clark were preceded by the *Miranda* warnings. But the state's failure in this particular was not considered error by the majority of this court because the introduction of the defendant's statement was used for the sole purpose of impeaching his credibility and not as an

[6]In *Lynumn*, an oral confession was made only after the police had threatened that all financial aid to the defendant's child would be cut off if the defendant did not cooperate. The Supreme Court held this to be a coerced confession.

[7]In *Beecher*, the defendant confessed after being threatened at gun point. Several days later, a written confession was signed while the defendant was under the influence of morphine and in intense pain.

admission used for substantive proof, *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 145; see *Harris* v. *New York* (1971), 401 U. S. 222, 28 L. Ed. 2d 1.[8] Moreover, the jury was admonished that this testimony could only be considered with respect to Defendant Clark's credibility (Tr. 1847-1848). It is the majority view that Assignment of Error No. II lacks merit.

## IV.

Errors are assigned for claimed lapses on the part of the trial court (1) in refusing to admit into evidence the doors to the premises on which defendants were arrested, and (2) in refusing to admit photographs of the interior of the premises (Assignments of Error Nos. V and VI).

Photographs were introduced which clearly showed the relationship of doors to the rest of the apartment. These pictures also depicted the bullet holes not only in the doors but in the walls as well. In addition, the jury had the opportunity to view the scene for themselves.

While it is "well settled that photographs . . . are not objectionable so long as they are . . . accurate representations of the scene which they purport to portray", *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 25, the trial court made a determination that the photographs in issue[9] did not meet this standard (Tr. 1417-1418, 1420). The bullet holes showing in the walls had been numbered and strings put through the holes allegedly to demonstrate the trajectory of the individual rounds (Tr. 1419-1420). However, the proffer did not include the foundation information to support the accuracy of the alleged trajectories of the bullets. Under these circumstances we cannot say that the trial court's ruling was an abuse of discretion, cf. *State* v. *Woodards, ibid.* Assignments of Error V and VI lack merit.

---

[8]In my opinion because the statement in question goes to the heart of the question of guilt or innocence and not peripheral matters, it affects more than credibility and the *Harris* rationale is not dispositive of the propriety of the use of the statements. See the analysis in Kent, *Harris* v. *New York: Death Knell of Miranda and Walder*, 38 Brooklyn Law Rev. 357 (1971). However a majority of the court do not read *Harris* as I do.

[9]Defendant's Exs. W, Y, AA, BB, CC, EE, HH, and II.

## V.

Assignment of Error No. IV attacks the conduct of the prosecutor during final argument claiming that he appealed to passion and prejudice in a way to compromise the appellants' right to a fair trial.

While the law allows considerable flexibility in argument, it does not permit an unlimited range. For example, it has been held that an appeal to a jury's pecuniary interest creates an impermissible impediment to consideration on the merits, *State* v. *Muskus* (1952), 158 Ohio St. 276, 284; that an argument exceeds the bounds of propriety when the counsel gives his view of the credibility of a witness because this invades the jury's province, cf. *Jones* v. *State* (1851), 20 Ohio 34, 48,[10] that it is error, but not prejudicial error, for a prosecutor to state his view of a defendant's guilt based upon the evidence. The error becomes prejudicial when the opinion is based on facts, or inferences from facts, outside the record, *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 82-83; *State* v. *Thayer* (1931), 124 Ohio St. 1, 5, 6. Moreover, it has been said that it is improper for a prosecutor to argue that a charge would not have been brought were it not true, cf. *Turner* v. *State* (1936), 21 Ohio Law Abs. 287, 278, 279. Of course, timely

---

[10]"Counsel frequently take great, and, in fact, unpardonable liberty in commenting upon the character of parties, and more especially of witnesses. . . . It is a bad practice . . . ." *Id.*, 48. See also *Code of Professional Responsibility*, 23 Ohio St. 2d 1, 42-43:

"EC 7-24 In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to his client. However, a lawyer may argue, on his analysis of the evidence, for any position or conclusion with respect to any of the foregoing matters."

interjection is generally necessary to save an objection, *State* v. *Nevius* (1947), 147 Ohio St. 263, 280, 283.

In the present case, the prosecutor's appeal included both his direct judgment in a witness's credibility[11] and the legally proscribed argument that the charges would not have been brought had they not been true.[12] In my view these comments accumulate to constitute prejudicial error. cf. *State* v. *Kay* (1967), 12 Ohio App. 2d 38, 51-52. It makes no difference that part of the comments were directed only to the credibility of a witness rather than the defendant. In either case such comments improperly invade the jury's sphere. Nevertheless, I would not rest reversal on this ground because there was no objection. The error was not preserved. However, reversal on other grounds would be necessary even if the argument had been impeccable. Prosecutor misconduct of another kind so offends basic due process and any concept of "ordered liberty", *Palko* v. *Connecticut* (1937), 302 U. S. 319, 324-325, 82 L. Ed. 288, 291-292, that there is no hope of repair save in a new trial.[13] (See VI below.)

## VI.

Assignment of Error No. III poses a difficult problem. After a witness had testified on direct, but before cross-examination, he was accosted in the hall by the prosecutor. The following colloquy from the record will demonstrate the factual occurence:

"Q What, if anything, occurred in the corridor outside of the courtroom?

---

[11]"Mr. Lazzaro: And he's been in and out every day of the trial and then he tells you that he didn't know there was a separation of witnesses, and he's been in here on every break practically during this entire trial. He's been out in the hallway with witnesses and he doesn't know there is a separation? There is a man—no, I'll take that back. There is a liar. . . . (Tr. 1775-1776).

[12]"* * * And if those police were lying to you, they wouldn't have brought him in the first place? if they were here lying to you, they wouldn't have brought him in. Never have to have this trial, ladies and gentlemen, and it would never have happened in any other country, either. . . ." (Tr. 1825)

[13]The majority does not share these conclusions. It finds Assignment of Error No. IV without merit. See the opinion of Krenzler, J.

"A. I was in the corridor, talking to Mr. Fred Ferrell, and Mr. Lazzaro came up to me and said—

"The Court: Just a minute. Mr. Ferrell was with you in the hallway?

"The Witness: Yes sir. I was talking to Mr. Ferrell.

"The Court: Proceed.

"A Mr. Lazzaro approached me and said, 'I want to tell you one thing before you get back into the courtroom. You are a lying son-of-a-bitch. You were in the courtroom every day of the trial,' or words to that effect.

"Then he said, 'You are going to be a lawyer, but if I have anything to do with it, you won't be.'

"Q Was there anything further said, Mr. Walsh?

"A. I said to him, 'That's not true,' the fact that, you know, that I had been in the courtroom every day of the trial or that I had lied on the stand in response to your question.

"Q Were there other persons present in that corridor?

"A. Yes, there were.

"Q Do you recall who or how many?

"A Myself, Curt Johnson was nearby, Mike Dowell's brother.

"The Court: Was Mr. Ferrell there?

"The Witness: Yes. My wife was seated on a bench about 15 feet away.

"Q And following that conversation, did you subsequently return to the stand?

"A Yes, I did.

"Q And did you complete your testimony?

"A Yes, I did.

"Q Your cross-examination?

"A Yes.

"Q. Tell us, Mr. Walsh, whether this in any way affected your testimony on the stand either as to statements or manner of testifying?

"A. I had been apprehensive when he began to cross-examine me about the rules and regulations and separation of witnesses. I became excited. That's about it. I was nervous through the rest of it." (Tr. 1306-1308)

The Court and prosecutor then had this exchange:

"The Court: Was his testimony substantially correct, sir?

"Mr. Lazzaro: Pretty close. I don't recall that I threatened him that I could not make him a lawyer or anything.

"I said if I had anything to do, I would write to the Bar on a person like that." (Tr. 1310)

When the defense sought to call a corroborating witness the court shut off further testimony:

"The Court: What do you want to corroborate?

"Counsel has already said it pretty much happened like that.

"Mr. Ferrell: Well, he said substantially. If he will stipulate that that is what happened—

"The Court: Counsel has already said that in court to the Judge." (Tr. 1310)

Based on his own admission, the prosecutor was found in contempt for conduct unbecoming a lawyer (Tr. 1313) and fined Fifty Dollars ($50) (Tr. 1314). A defense motion for mistrial (Tr. 1311) was never specifically overruled but the record makes abundantly clear the court's intention to do so (Tr. 1298-1314) and it was not granted. The court also concluded that the prosecutor's action did no injustice to the appellants (Tr. 1312-1313).

The question to be decided is, in one sense, whether a mistrial must be declared for tampering with a defense witness even though the trial court concludes that the defendants were not prejudiced. This would be a "harmless error" disposition. However, the court's conclusion of no injustice was apparently based on its judgment that the witness *was not in fact* influenced. For the court said:

"The Court: Because of the fact that Mr. Walsh is an intern from his own testimony, because of the fact that he has been employed in a pseudo-legal capacity, because, as the Court observed Mr. Walsh during his testimony and listening to him say to the Court that he was not, did not change any testimony that he would have made because of what Mr. Patrick Lazzaro said to him, the Court doesn't feel that there would be any injustice done to the Defendants so far as testimony in this courtroom so far as demeanor and candor of the witness.

"However, this Court feels from the admission made by the Prosecutor himself, Mr. Lazzaro, that Mr. Lazzaro's conduct was unbecoming a lawyer." (Tr. 1312-1313.)

This adds a new dimension. If the determining factor is influence or no influence on the witness, the issue becomes—will a mistrial for witness tampering be denied in the absence of a showing that the tampering was successful?[14] Thus, couched *success* may determine prejudice and a more fundamental concern becomes evident. And that is whether the integrity of our system of justice can countenance any conviction in a trial marked by a prosecution attempt to influence a witness even though unsuccessful. Because it is clear that witness tampering gravely threatens a fair trial, the issue rises to constitutional status. For fair trial is the essence of Due Process.

While one of the teachings of *Chapman* v. *California* (1967), 386 U. S. 18, 24, 17 L. Ed. 2d 705, 710-711, is that error of constitutional dimension is not exempt from application of the harmless error doctrine, the exemption only applies when harmlessness is demonstrated beyond a reasonable doubt. More to the point, it is apparent that some error is so basic that it will be presumed harmful and makes it unnecessary to establish actual prejudice, cf. *Rideau* v. *Louisiana* (1963), 373 U. S. 723, 726-727, 10 L. Ed. 2d 663, 665-666. Right to counsel is a prime example of error that can never be treated as harmless, *Chapman* v. *California, id.* at 23, 17 L. Ed. 2d 710, fn. 8; cf. *Gideon* v. *Wainwright* (1963), 372 U. S. 335, 343-344, 9 L. Ed. 2d 799, 804-805. And the Supreme Court of Ohio has said of the right of a defendant to be present when the jury trying him is instructed:

"It was the right of the plaintiff in error to be present at each and every instruction given to the jury as to the law of the case. This right was denied to him by reason of his imprisonment under the order of the court; and without inquiry as to the correctness of the instruction so given in his absence it *will be presumed* that he was prejudiced thereby.

---

[14]Presumably no one would argue for the principle that it is permissible to attempt to coerce so long as the attempt fails.

"Nor was the irregularity cured by the presence of his counsel at the time the additional instruction was given and his failure to make objections. The right of that accused to be present on the trial of such case can not be waived by counsel." *Jones* v. *State* (1875), 26 Ohio St. 208, 210. (Emphasis supplied.)

By any standard for weighing the gravity of error no system depending on truthful and uninhibited fact finding can tolerate witness tampering any more than it could countenance perjury—an offense of comparable weight. That Ohio policy takes a grave view of such matters is evident from the fact that the Ohio legislature placed R. C. 2917.07[15] in the criminal code.

That section provides:

"No person shall, corruptly or by *threats* or force, attempt to influence, intimidate, or impede a person whose name has been drawn for jury service, a juror, *witness,* or officer of any court in the discharge of his duty, or corruptly or by *threats* or force obstruct or impede, or attempt to obstruct or impede, the due administration of justice therein.

"Whoever violates this section shall be fined not more than one thousand dollars or imprisoned in the county jail not more than six months or imprisoned in the penitentiary not less than one nor more than three years, or both such fine and imprisonment."[16] (Emphasis added.)

A fair trial has its own ecosystem. The purity of it requires that witnesses give testimony without threats from either party. In my view, these defendants are entitled to a new trial free from the taint that has infected this one.

---

[15]R. C. 2917.07 was in effect when the instant case was tried. See fn. 16 for a current section of similar import.

[16]See comparable section in the new criminal code effective January 1, 1974—Section 2921.03(A) and (B):

"(A) No person, knowingly and by force or by unlawful threat of harm, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of his duty.

"(B) Whoever violates this section is guilty of intimidation, a felony of the third degree."

However, the majority does not agree that Assignment of Error No. III has merit.[17]

## VII.

There was more than sufficient evidence upon which a jury could reach a verdict of guilty and an appellate court will not upset the findings of a jury unless such findings are against the manifest weight of the evidence. See *State* v. *Ray* (1956), 102 Ohio App. 395. In my view, Assignment of Error No. VII is without merit except as to its general claim that a fair trial and due process were denied these defendants. That claim, insofar as it is not tied to the weight of the evidence, I find convincing. I believe the defendants were deprived of a fair trial and due process for the reasons stated in connection with Assignment of Error No. III under Section VI, *supra.* The majority does not.[17]

Moreover, it is my view that the considerations which formed the basis of my disposition of Assignment of Error No. III require that the defendants be retried. Again, the majority disagrees.[17]

I would reverse and remand for further proceedings according to law. However, for reasons stated by Judge Krenzler for the majority of the Court the judgment in the court below is affirmed.

SILBERT, P. J., and KRENZLER, J., concur in part only.

---

[17] See the Opinion of Krenzler, J.