OPINION
Appellant, Anthony Cisternino, appeals from the judgment of conviction and imposition of sentence by the Lake County Court of Common Pleas entered upon a jury verdict finding him guilty of felony domestic violence, kidnapping, and abduction.
At times, appellant and Michelle Gecsey had a boyfriend-girlfriend relationship. During those times, they lived together at appellant's residence. The events that led to appellant's indictment occurred on January 8, 1999. Appellant and Michelle Gecsey had an argument; consequently, she left to stay with her sister. Later, Michelle Gecsey called appellant to come pick her up. When appellant arrived, he observed an unidentified man sleeping on the couch. They proceeded to leave together. While driving, appellant asked Michelle if she slept with the man on the couch. A fight ensued.
In her police statement submitted later that day, Michelle Gecsey wrote:
 "* * * He kept punching me * * * biting me. He told me that he was going to kill me * * * I jumped out of the car and he dragged me * * * A man in a van came out to help * * * He's my ex-boyfriend. I used to live with him * * *"[1] (State's Exhibit 7, admitted into evidence.)
 During appellant's preliminary hearing on January 19, 1999, Michelle Gecsey testified consistently with her police statement. She testified that appellant hit her in the head, bit her on the hand, and pulled her hair. She further testified that after appellant threatened to kill her, she tried to jump out of the car.
However, on March 26, 1999, Michelle Gecsey submitted an affidavit to appellant's attorneys describing the events differently. The affidavit stated:
 "* * * I was hitting on him and then he said it was over and I said * * * I'm going to kill myself so I jumped out of the car and Anthony Cisternino saved my life by pulling [me back] into the car * * * That's how my shirt got torn * * * that's how I got marks on my back * * * I lied to the police about him biting me* * *" (Defendant's Exhibit B, admitted into evidence.)
 During appellant's trial, which commenced on July 13, 1999, Michelle Gecsey was called as a court's witness upon a motion by the state. On cross-examination by the prosecution, she testified that appellant hit her in the head and bit her hand. She stated that she was trying to jump out of the car after appellant told her that he cheated on her. She again testified that she had lived with appellant at various times during the last two years. Upon being handed her police statement to review, she testified that it was "somewhat" an accurate rendition of the events with the only inaccuracy being that he did not say that he was going to kill her; rather, he said he was going to "beat her ass."
 On cross-examination by the defense, Michelle Gecsey was asked about the affidavit that she had submitted. She stated that she and appellant by mutual agreement decided what she should write. She also acknowledged that she had attempted suicide previously in the presence of appellant. She further testified to more inaccuracies contained in her police statement.
Witnesses Carey Masci and his son, John Anliker, testified consistently with what they had written in their police statement. They both testified that they heard Michelle Gecsey yelling "help, let me go". They both stated that they saw Michelle Gecsey hanging out of the car as appellant sped off. Carey Macsi testified that he immediately reached for the bat that was in his van, and he began waiving it at appellant, yelling "let her go". Both men testified that as Michelle Gecsey attempted to go back into the car to get her purse and coat, appellant grabbed her by the hair and would not let go.
Patrolman Christopher Cichon, an off duty Fairport Harbor police officer, had stopped to see if an accident occurred. His testimony at trial was consistent with his police statement. He testified that he heard Carey Masci yelling "let her go" and that Michelle Gecsey was wearing only blue sweat pants and a bra.
On January 19, 1999, a preliminary hearing was conducted in the Willoughby Municipal Court. The magistrate filed an order concerning Anthony Cisternino, concluding the state established probable cause to believe he committed a violation of R.C. 2919.25, domestic violence.
On March 19, 1999, appellant was indicted by the Lake County Grand Jury on four counts: domestic violence, a felony of the fifth degree,[2] in violation of R.C. 2919.25; kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3); kidnapping, a felony of the first degree in violation of R.C. 2905.01(B)(2); and abduction, a felony of the third degree, in violation of R.C. 2905.02. Appellant entered a plea of not guilty on all four counts.
Appellant's prior conviction of domestic violence was stipulated in writing and signed by both sides; however, it was not entered into evidence. At the conclusion of the state's case, appellant made a motion for judgment of acquittal on all four counts. This motion was denied. The trial court also denied appellant's proposed jury instructions.
The jury returned a verdict of guilty on Count One-domestic violence, guilty on Count Three-kidnapping, guilty on Count Four-abduction, and not guilty on Count Two-kidnapping. A judgment entry reflecting the jury verdict was filed on July 26, 1999.
Judge Robert B. Ford, who presided over appellant's trial, "was not available" to sentence him on the date set for sentencing. Judge Warren J. Bettis sentenced appellant on August 13, 1999. Appellant was sentenced to the maximum sentence available for each count with the sentences of kidnapping and abduction merging and running concurrently with the domestic violence sentence, a total of ten years.
Appellant timely filed a notice of appeal, asserting twelve assignments of error.[3]
In his first assignment of error, appellant argues he was denied due process of law because his preliminary hearing was conducted before a magistrate who issued an order, but did not issue a report. Appellant maintains that a judge should have signed the order binding him over to the grand jury. Appellant also claims that because there was no report, he could not file objections as permitted by Crim.R.19(C).
A magistrate may issue an order in a preliminary hearing that becomes effective without judicial approval. Staff Notes to Crim.R.19(C)(5)(a). In the case sub judice, the magistrate filed an order on the same day as the preliminary hearing, concluding that the state established probable cause to believe appellant did commit a violation of R.C. 2919.25, domestic violence. This order was signed by Judge Larry Allen; however, appellant did not file a motion objecting to the magistrate's order as required by Crim.R.19(C)(5)(b). Upon "bindover" to the Lake County Grand Jury, an indictment was returned charging appellant with four counts.
Pursuant to Crim.R.19(C)(5)(b), a party may appeal a magistrate's order by filing a motion with the court within fourteen days after the order is entered.[4] This court has held that where no objections are timely and properly raised under Crim.R.19(C), then any error that may have occurred is waived for appeal. State v. Chagaris (1995), 107 Ohio App.3d 551,554. Appellant failed to file a motion objecting to the magistrate's order. Moreover, the record does not warrant this court's application of the plain error doctrine to this assignment of error.[5] State v.Wickline (1990), 50 Ohio St.3d 114, 120.
Furthermore,"[w]hen the Grand Jury returns an indictment, the preliminary hearing becomes superfluous * * * `the general rule is that a subsequent indictment by a grand jury renders any defects in the preliminary hearing moot * * *'" State v. Fontes (Aug. 3, 1999), Union App. No. 14-99-03, unreported at 2 (citing State v. Gott (June 28, 1990), Auglaize App. No. 2-88-19, unreported). Once the grand jury indicted appellant, the preliminary hearing events became moot.
For the reasons stated, appellant's first assignment of error is without merit.
Appellant's second error of assignment contends that he was denied due process of law when the trial court, upon a motion by the state, called Michelle Gecsey as a court's witness.[6] Appellant argues that prior to a court calling a witness, there must be some advance knowledge that a witness is hostile, that she will not testify, or that she is expected to testify inconsistently. Appellant further asserts that the prosecution circumvented the requirements of Evid.R. 607, which require a showing of "surprise" prior to using an inconsistent statement to attack the credibility of a witness. Appellant also contends that the trial court should have given a limiting instruction.
A trial court has a fundamental duty to arrive at the truth. Consequently, its authority to call a witness is generally within its inherent powers. Staff Notes to Evid.R. 614(A). An appellant who objects to a court calling a witness must show an abuse of discretion, in that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Apanovitch (1987), 33 Ohio St.3d 19, 22. Once a witness is called as a court's witness, the prosecution does not need to show "surprise" in order to impeach that witness. Id. at 22; Statev. Davis (Dec. 10, 1993), Lake App. No. 92-L-089, unreported. Also, a party may impeach a court's witness using a prior inconsistent statement.State v. Dacons (1982), 5 Ohio App.3d 112, 115.
In the case before us, appellant timely objected when the court called Michelle Gecsey as a witness; however, appellant did not request a limiting instruction. The trial court was within its bounds of discretion in calling Michelle Gecsey as a court's witness. Evid.R. 614 does not require a witness to be shown hostile or shown that she will testify inconsistently prior to a court calling that witness. Nevertheless, in their motion to call Michelle Gecsey as a court's witness, the state listed reasons for their request. These reasons included the inconsistencies between her police statement and her affidavit, her long relationship with the appellant, and her continued contact with appellant and his family.
Evid.R. 607 is not applicable in this case because Michelle Gecsey was called by the court. As a result, the prosecution did not need to show "surprise" prior to attacking her credibility by using her inconsistent statement. Furthermore, appellant did not request a limiting instruction as required by Evid.R. 105. For the reasons stated, we conclude appellant's second assignment of error lacks merit.
In appellant's third assignment of error, appellant argues that the trial court erred when it allowed Michelle Gecsey to read her police statement upon request by the prosecution. Appellant also asserts that a statement that has been recanted cannot be used as substantive evidence against a defendant.
Once a witness is called by the court, Evid.R. 614 allows both sides to cross-examine that witness using a prior inconsistent statement. Dacons,supra, at 115.
Pursuant to Evid.R. 613, extrinsic evidence of a prior inconsistent statement is admissible into evidence; however, a proper foundation must be laid. State v. Mack (1995), 73 Ohio St.3d 502 . The following must occur whether on direct or cross-examination prior to offering a prior inconsistent statement into evidence: (1) the witness is given the statement to review; (2) the witness is asked whether she made it; (3) the witness is given an opportunity to deny, admit, or explain the statement; and (4) the other side is given a chance to cross-examine the witness. State v. Theuring (1988), 46 Ohio App.3d 152.
In this case, on cross-examination by the prosecution, Michelle Gecsey was handed her police statement to review. She was asked if this was an accurate rendition of what occurred that night, and she replied "somewhat". She testified that there was only one inaccuracy. The prosecutor asked her to read it, and appellant timely objected; however, the court told her to proceed. The defense was afforded an opportunity to cross-examine Michelle Gecsey in which she testified to additional inaccuracies in her police statement.
In reviewing the requirements of Evid.R. 613, we conclude that the police statement was offered and admitted into evidence consistent with that rule. Michelle Gecsey was given an opportunity to explain, appellant had an opportunity to cross-examine her, and the subject matter of the statement is a fact of consequence to appellant's trial. Michelle Gecsey did not recant her police statement, she merely testified to the inconsistencies contained therein. Hence, the trial court did not err in allowing Michelle Gecsey to read her police statement and in admitting it into evidence. Therefore, appellant's third assignment of error is overruled.
Appellant, in his fourth assignment of error, claims that he was denied a fair trial when the trial court allowed Patrolman Maloney to testify to hearsay.
Pursuant to Evid.R. 802, hearsay evidence is not admissible. Hearsay is an out of court statement offered into evidence to prove the truth of the matter it asserts. Evid.R. 801(C).
In the case sub judice, Patrolman Maloney was not asked to testify to what Michelle Gecsey, Carey Masci, or John Anliker told him on January 8, 1999; rather, he was asked whether what he was told was consistent with what he observed and photographed.
The testimony of Patrolman Maloney did not contain hearsay. Therefore, appellant's fourth assignment of error lacks merit.
Next, appellant's fifth assignment of error asserts that during closing argument and rebuttal argument, the prosecutor appealed to passion and prejudice and pleaded for the jury to put themselves in the positions of the parties and to not base their decision on the evidence; rather, to convict the defendant on general principles.
The conduct of a prosecutor during trial is not grounds for error unless such conduct deprives an appellant of a fair trial. State v.Maurer (1984), 15 Ohio St.3d 239, 266. A prosecutor is encouraged to advocate strongly and even vehemently for a conviction. State v. Draughn(1992), 76 Ohio App.3d 664, 671. This includes commenting on what the evidence has shown and what conclusions and inferences can be drawn from that evidence. State v. Richey (1992), 64 Ohio St.3d 353, 362. A prosecutor may bolster his witnesses, may state that the evidence supports the conclusion that his witnesses are telling the truth, and may, in his rebuttal, state that the evidence does not support the defense's conclusions or that certain witnesses are more or less believable.Draughn, supra, at 670.
A court of review must first determine whether the alleged remarks made are improper and, if so, whether those remarks prejudicially affected the appellant's substantial rights to a fair trial. State v. Lott (1990),51 Ohio St.3d 160, 165. Upon review, the remarks must be examined as a whole and in the context of the entire trial. State v. Frazier (1995),73 Ohio St.3d 323, 342. All relevant factors must be examined including: (1) the nature of the closing remarks; (2) whether an objection was made; (3) whether corrective instructions were given by the court; and (4) the strength of the evidence against the defendant. Statev. Owens (Nov. 9, 1990), Lake App. No. 89-L-14-047, unreported at 4 (citing State v. Clark (1974), 40 Ohio App.2d 365).
In the case before us, the trial court did not give corrective instructions at any time during the state's closing arguments. Appellant objected only once during the state's closing argument; therefore, the remainder of the alleged improper remarks would invite reversal only if the trial court's allowance thereof constituted plain error.
Through the testimony of witnesses Carey Masci, John Anliker, Patrolman Cichon, Patrolman Maloney, and the photographs of Michelle Gecsey's injuries, there was sufficient evidence presented at trial to support appellant's convictions.
In viewing the prosecutor's arguments in their entirety and in the context of the entire case, this court concludes that the prosecutor did not make arguments to the jury that warrant reversal of the proceedings below. We overrule appellant's fifth assignment of error.
In his sixth assignment of error, appellant states that he was denied due process of law when the trial court refused to read his proposed jury instructions. Appellant timely objected to the trial court's refusal.[7]
Appellant's proposed instructions included instructions for the affirmative defense of necessity, defining liberty and defining privilege.
A trial court must fully and completely give only those instructions that are relevant and necessary for the jury to weigh all the evidence.State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. A defendant is entitled to have his proposed instructions included when they are correct statements of law, pertinent to the proof in the record or material issues, timely presented, and not already included in substance in the charge to the jury. State v. Guster (1981),66 Ohio St.2d 266, 269; State v. Luff (1993), 85 Ohio App.3d 785, 804. Proposed jury instructions do not have to be accepted by the trial court in their precise language even if they are correct statements of the applicable law. Rather, the trial court has discretion in using its own language to convey those same legal principles. State v. Scott (1987),41 Ohio App.3d 313. A reviewing court must determine whether the trial court abused its discretion in refusing to read an appellant's proposed instruction.
In the case before us, appellant's theory of the case asserts that he acted reflexively or involuntarily in grabbing Michelle when he saw her jumping out of the car, and it was necessary for him to keep her in the car to prevent her from committing suicide. In deciding not to include appellant's proposed instructions, the trial court stated appellant's instructions went only to whether he knowingly or recklessly did or did not do something.
In charging the jury, the trial court's instruction included, in pertinent part:
 "* * * You will determine from these facts * * * whether * * * Defendant * * * was causing or attempting to cause physical harm to Michelle Gecsey * * * It must be established * * * there was present in the mind of the Defendant a specific intention to terrorize or inflict serious physical harm * * * To restrain one of her liberty means to limit or restrain * * * freedom of movement * * * Knowingly means that a person is aware of the existence of the facts * * * Privilege means an immunity, license, or right conferred by law * * * or growing out of necessity * * * If * * * Defendant acted out of mistake, accident, lack of knowledge, or other innocent reason, then he did not act knowingly * * *"
Upon review, the substance of appellant's proposed instructions was essentially contained in the charge given to the jury. The court included definitions of `privilege' and `restraint of liberty'. The court further instructed that if the jury finds that the defendant acted out of mistake, accident, lack of knowledge, or any other innocent reason, then appellant did not act knowingly. In light of these instructions, we conclude that the trial court did not abuse its discretion in denying appellant's proposed jury instruction. Appellant's sixth assignment of error is overruled.
Appellant's seventh assignment of error asserts that he was denied due process of law for two reasons: (1) the trial court did not instruct the jury on the additional element of a previous conviction of domestic violence necessary to elevate his sentence from a misdemeanor of the first degree to a felony of the fifth degree; (2) pursuant to R.C.2945.75(A)(2), a guilty verdict must state the degree of the offense or state that an additional element is present to elevate the degree. Appellant contends that based on those two reasons, he should be found guilty of the least degree of domestic violence.
R.C. 2919.25 provides, in relevant part:
 "(D) * * * violation of division (A) or (B) of this section is a misdemeanor of the first degree. If the offender previously has been convicted of domestic violence * * * a violation of division (A) or (B) of this section is a felony of the fifth degree * * *"
 A prior conviction, which elevates the degree of a subsequent offense, is an element of that subsequent offense. Therefore, the prosecution must prove the prior conviction beyond a reasonable doubt just as it must prove every other element of the offense charged. State v. Rivera (1994), 99 Ohio App.3d 325, 329 (citing State v. Allen (1987), 29 Ohio St.3d 53, 54).
A stipulation concerning a prior conviction does not relieve the state of its burden of proving beyond a reasonable doubt every element of the offense charged. State v. Mitchell (Dec. 5, 1996), Cuyahoga App. Nos. 67490 and 67491, unreported. A jury must always make a factual determination concerning the existence of a prior conviction when the degree of the offense charged is enhanced even if a stipulation is submitted. Mitchell, supra. Where the jury is unaware of a prior conviction when it renders a guilty verdict, and a stipulation of the defendant's prior conviction is made only for sentencing purposes, the defendant cannot be sentenced to the elevated degree for the convicted offense. State v. Furlow (1993), 90 Ohio App.3d 699.
In State v. Fatica (Oct. 15, 1999), Geauga App. No. 93-G-1799, unreported, at 14-15, this court held that the logic in both Furlow andMitchell is persuasive:
 "* * * [W]hen the parties to an action are able to reach a stipulation * * * the stipulation does not have the effect of withdrawing the issue from the jury's consideration * * * a stipulation is simply another type of evidential submission which the jury is required to consider in making its factual findings. Unless it is made in conjunction with a valid jury waiver, a factual stipulation does not change the role of the trial court in a criminal proceeding * * * when the existence of a prior conviction is an element of a criminal offense, a trial court lacks the authority to hear that issue itself unless the defendant has executed a written waiver of his right to have the jury decide the issue."
R.C. 2945.75 states, in relevant part:
 "(A) When the presence of one or more additional elements makes an offense one of more serious degree:
* * *
 "(2) A guilty verdict shall state either the degree of the offense * * * or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 In the case sub judice, appellant was previously convicted of domestic violence in violation of R.C. 2919.25(A) on April 11, 1989. The indictment charged appellant with a felony of the fifth degree for Count One-domestic violence as a result of his prior conviction. At trial, appellant's prior conviction was stipulated to in writing and signed by both sides including appellant. The state did not present any evidence during appellant's trial as to his prior conviction, nor was the stipulation admitted into evidence.
During the charge to the jury, the trial court did not refer to appellant's prior conviction, nor did the court instruct that a prior conviction of domestic violence is an element which elevates the degree of the charge. The court did not read the indictment to the jury. The verdict form did make reference to "as charged in the indictment"; however, it did not include the specific degree of conviction, nor did it include the existence of an element which would elevate the degree of the conviction.
Upon review, we conclude that appellant's prior conviction of domestic violence is an element of his subsequent domestic violence offense because it elevates the degree charged. The jury was unaware of appellant's prior conviction when it returned a guilty verdict for domestic violence. Regardless of the existence of the stipulation, the prosecution did not prove the prior conviction to the jury beyond a reasonable doubt. In addition, the failure of the verdict form to comply with applicable requirements results in a guilty verdict of the least degree for domestic violence. State v. Gleason (1996), 110 Ohio App.3d 240. In this case, appellant could only be convicted of the lesser degree for his domestic violence conviction, a misdemeanor of the first degree. For the foregoing reasons, appellant's seventh assignment of error has merit.
Next, appellant asserts in his eighth assignment of error that he was denied due process of law when he was convicted of domestic violence without proof that Michelle Gecsey was a family or household member.
The court instructed the jury that to find the defendant guilty of domestic violence, they must find beyond a reasonable doubt that the defendant knowingly caused or attempted to cause physical harm to Michelle Gecsey, a family member or household member. The court defined the elements of domestic violence including the definitions of "family or household member" and "person living as a spouse."[8]
The state presented evidence showing that Michelle Gecsey and appellant cohabitated "on and off" over the last two years. Specifically, Michelle Gecsey wrote in her police statement that she used to live with appellant. She testified at trial that she lived with appellant from September to November, 1998, January, March through June, 1999 and that she was staying at appellant's house right before they got into the argument in which she left to stay with her sister.
Appellant's brief cited to City of Middletown v. Walker (1995),107 Ohio App.3d 516, in which the victim testified that she and the defendant had dated, but had never cohabitated. In Walker, the Twelfth District Court of Appeals reversed the defendant's domestic violence conviction holding the prosecution did not prove the victim was a "family or household member." Id.
In this case, we conclude that the prosecution did present sufficient evidence to establish that Michelle Gecsey and appellant lived together. Appellant's eighth assignment of error lacks merit.
Appellant's ninth assignment of error claims that there was insufficient evidence presented at the end of the state's case to sustain his convictions. Appellant further argues that the trial court erred when it overruled his Crim.R. 29(A) motion for judgment of acquittal on Count Three-kidnapping and Count Four-abduction. He asserts his actions were privileged because he was preventing Michelle Gecsey from committing suicide. Finally, appellant also argues that the jury verdicts are against the manifest weight of the evidence presented at trial. Appellant argues that an accidental event is not a crime in Ohio, and Michelle Gecsey testified that she lied in her police statement.
Because appellant asserts three separate errors, we will review each separately. First, a sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the offense charged in order to allow the matter to go to the jury. State v. Schlee
(Dec. 23, 1994), Lake County App. No. 93-L-082, unreported at 4. InSchlee, we set forth the test of sufficiency of evidence: "whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt."Id. at 4. Upon review, an appellate court shall not reverse a jury verdict if there exists sufficient evidence in which the jury could reasonably find that all the elements of the offenses charged were proven beyond a reasonable doubt. Schlee, supra, at 5 (citing State v. Eley
(1978), 56 Ohio St.2d 169, syllabus).
In the case before us, the state presented the following evidence: the testimony of witnesses Carey Masci and John Anliker showing that Michelle Gecsey was yelling "help, let me go", that she was hanging out of a moving car as appellant sped off, and that appellant grabbed her hair and would not let go. The prosecution also admitted into evidence the photographs of her injuries showing bite marks and road rash along with Michelle Gecsey's police statement stating that appellant hit her, bit her, threatened to kill her, and dragged her. Finally, the state presented the testimony of Michelle Gecsey who stated that the appellant hit her and bit her.
Upon viewing the probative evidence presented by the state and the inferences from it, in a light most favorably to the state, we conclude that a jury could have found all elements of the offenses appellant was charged with were proven beyond a reasonable doubt.
Next, if the evidence is such that reasonable minds can differ as to whether an element of a crime is proven beyond a reasonable doubt, then a trial court shall not grant a motion for judgment of acquittal.[9]State v. Apanovich (1987), 33 Ohio St.3d 19, 23 (citing State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus).
In determining whether a trial court's denial of judgment of acquittal is proper, a reviewing court must make the following conclusion while examining all the evidence in a light most strongly in favor of the state: a rational trier of fact could have found essential elements of the offense were proven beyond a reasonable doubt. State v. Williams
(1996), 74 Ohio St.3d 569.
In reviewing the evidence presented at trial, most strongly in favor of the state, we conclude that the trial court properly denied appellant's motion for judgment of acquittal. As stated above, a jury could have found the essential elements of kidnapping under Count Three and abduction under Count Four were proven beyond a reasonable doubt.
Finally, appellant also argued that his conviction is against the manifest weight of the evidence. Upon making such a determination, we held in Schlee, supra, that an appellate court must review the entire record, weigh the evidence and all reasonable inferences from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. Schlee, supra,
at 5 (citing State v. Davis (1988) 49 Ohio App.3d 109, 113); State v.Otten (1986), 33 Ohio App.3d 339, 340. An appellate court will not reverse a guilty verdict if there exists substantial evidence in which a trier of fact could reasonably conclude that the prosecution had proven every element of the offense beyond a reasonable doubt. Eley, supra,56 Ohio St.2d 169.
In reviewing and weighing all the evidence presented by both sides including the testimony of Michelle Gecsey and all other witnesses, the photographs of Michelle's injuries, Michelle Gecsey's police statement and her affidavit, the credibility of the all witnesses who testified, we determine that a jury can reasonably conclude that appellant was guilty of the charged offenses. The jury verdict was not against the manifest weight of the evidence. For the reasons stated, appellant's ninth assignment of error lacks merit.
In appellant's tenth assignments of error, appellant argues that he was denied a substantial right when Judge Warren Bettis sentenced him rather than Judge Robert B. Ford, who presided at his trial.
Appellant was scheduled for sentencing on August 13, 1999. Judge Robert B. Ford, who presided over appellant's trial, was not available to sentence him until August 23, 1999. The record does not indicate the specific reason why Judge Ford was unavailable to sentence appellant that day or why he would not be available until ten days later.[10] Judge Warren Bettis was assigned to sentence appellant. Appellant timely objected and requested Judge Robert B. Ford to sentence him because he had heard the evidence at trial. Judge Bettis assured appellant that he had reviewed the presentence report and that he holds a certificate of assignment signed by Chief Justice Moyer allowing him to preside in the Lake County Court of Common Pleas.
Crim.R. 25(B) states, in pertinent part:
 "After verdict or finding of guilt. If for any reason the judge before whom the defendant has been tried is unable to perform his duties of the court after a verdict or finding of guilt, another judge designated * * * may perform those duties. If such other judge is satisfied he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial." (Emphasis added).
 Crim.R. 25(B) "inferentially commands that unless unable to do so, the judge who presided at the criminal trial must also preside at the post-conviction proceedings, including sentencing." Beatty v. Alston (1975), 43 Ohio St.2d 126, 127. In State v. Green (1997), 122 Ohio App.3d 566, the Twelfth District Court of Appeals held it was proper under Crim.R. 25(B) for Judge Bressler to sentence defendant even though he was found guilty in a bench trial before Judge Elliot. Judge Elliot had retired soon after defendant's trial. Id. In State v. Blythewood (1978), 60 Ohio App.2d 300, the Eighth District Court of Appeals held that where the judge who accepted defendant's guilty plea and imposed sentence could not rule on defendant's subsequent motion, an administrative judge properly performed those duties under Crim.R. 25(B).
Crim.R. 25 clearly uses the terms "unable to perform his duties of the court after a verdict or finding of guilt." In Green, supra, Judge Elliot was permanently "unable to perform" his duties at the time of sentencing defendant since he had retired shortly thereafter. In Blythewood, the presiding judge was "unable to perform" his duties indefinitely due to illness.
Furthermore, Crim.R. 32(C) requires the judge to sign a judgment of conviction which includes the plea, the verdict or findings, and the sentence.[11] Although a minor clerical error since Judge Bettis held a proper certificate of assignment by Chief Justice Moyer, the Judgment Entry of Sentence does not reflect the proper judicial signature showing Judge Bettis as the sentencing judge. Consequently, the sentencing judge should sign the Judgment Entry of Sentence.
We conclude that an amended Judgment Entry of Sentence should reflect the proper judicial signature; however, in all other respects, appellant's tenth assignment of error lacks merit and is overruled.
Appellant, in his eleventh assignment of error, claims he was denied due process of law when Visiting Judge Bettis handed the maximum sentence allowed for each offense even though he was not present during trial to hear the evidence. Appellant claims the court, without any basis, increased the seriousness of his convicted offenses. Appellant also asserts that making the presentence report part of the record violated his rights.
Before a court sentences a defendant to the maximum sentence available, certain findings must be satisfied. R.C. 2929.14(C) states, in relevant part:
 "* * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized * * * only * * * upon offenders who pose the greatest likelihood of committing future crimes * * *"
 The record of the trial court must reflect that the maximum sentence was imposed because the defendant satisfied one of the criteria listed in R.C. 2929.14(C). State v. Edmunson (1999), 86 Ohio St.3d 324, 329. The trial court must give the specific reason for selecting the maximum sentence. Id. at 328.
In State v. Whittenberger (Dec. 3, 1999), Portage App. No. 98-P-0047, unreported at 6, we held that because the defendant received the maximum sentence, he is entitled to a de novo review of his sentences.[12] "We must determine whether (1) the law provides for the sentence imposed, (2) the trial court complied with the purposes and principles of sentencing set forth in R.C. 2929.11 and 2929.12, and (3) the record supports the findings of the trial court in imposing the sentence." Id. at 6.
In the case before us, the trial court handed out the maximum sentence for each conviction: a definite term of one year for domestic violence-a felony of the fifth degree; a definite term of ten years for kidnapping-a felony of the first degree; and a definite term of five years for abduction-a felony of the third degree. The sentences under kidnapping and abduction merge pursuant to R.C. 2941.25(A), and that sentence ran concurrently with the domestic violence sentence, a total of ten years for all three convictions.
Upon review, first, we find that the law provides for a prison sentence for each of appellant's convictions pursuant to R.C. 2929.14(A). We also find that the sentencing judge satisfied the criteria of R.C. 2929.14(C) before sentencing appellant to the maximum sentence allowable by law for each conviction. The judge stated that a short prison sentence would not protect the public because Anthony Cisternino is likely to engage in criminal conduct in the future based on his prior criminal history, his prior prison incarcerations, and his failures to rehabilitate himself in the past.[13] The record clearly supports imposition of the maximum sentence for each of appellant's convictions.
Next, we address appellant's argument that by making the presentence report part of the record his rights were violated. During sentencing, Judge Bettis made the presentence report part of the public record by stating that it is not only for the parties and counsel to see, but for the public and the press to see as well. The defense timely objected to the admission of that document into the record. The state also suggested that the presentence report be sealed for review; however, the trial court disagreed.
R.C. 2951.03(B)(3) and (C) give a trial court discretion as to whether any of the information in the presentence report should or should not be disclosed pursuant to (B)(1) of the section. On review, a lower court's decision will not be disturbed absent a showing of "abuse of discretion", a showing that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Apanovich, supra, at 22.
In the case sub judice, the court read from the presentence report and recited all of appellant's crimes beginning from 1983 as a juvenile and as an adult starting in 1985. The court also commented on appellant's traffic crimes, his drug problems, and his diagnosis of bipolar. Furthermore, the judge asked what sentence the state recommended for each conviction. The trial court, in its discretion, did not refuse to withhold any of the information contained in the presentence report; rather, the court read the contents of the report during sentencing. The contents of the report were already contained in the record via the sentencing judge reading from the presentence report.
We conclude that the court did not abuse its discretion when the presentence report was made part of the record. The information contained therein was already part of the trial transcript. We overrule appellant's eleventh assignment of error.
Finally, appellant's twelfth assignment of error argues his rights were violated when he was charged twice for kidnapping the same individual on the same date, but was acquitted of one count of kidnapping under R.C.2905.01(A)(3) and found guilty of the other count of kidnapping under R.C. 2905.01(B)(2). Appellant claims this makes the verdicts inconsistent, and he is placed twice in jeopardy.
Kidnapping under R.C. 2905.01 states, in relevant part:
 "(A) No person, by force, threat * * * shall remove another from the place where * * * found or restrain the liberty of the other person, for any of the following purposes* * *
 "(3) To terrorize, or inflict serious physical harm on the victim or another * * *
 "(B) No person, by force, threat * * * shall knowingly * * * under circumstances that create a substantial risk of serious physical harm to the victim* * *
"(2) Restrain another of his liberty * * *"
 Kidnapping is divided into two sections with each section having a different primary thrust while sharing certain common elements. Staff Notes to R.C. 2905.01. Section (A) includes an abduction or restraint of another for any one of the specified purposes, and it is the offender's purpose which determines kidnapping under this section. Staff Notes to R.C. 2905.01. However, even though section (B) also includes abduction or restraint, the offender's purpose is irrelevant since the key factor is the special danger in which the victim is placed. Staff Notes to R.C. 2905.01.
Furthermore, "[i]rreconcilable verdicts are not a basis for reversing a conviction. In criminal cases * * * Ohio follows the general rule that consistency between verdicts on the several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others * * * the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal." Statev. Kimbrough (Aug. 17, 2000), Cuyahoga App. No. 76517, unreported at 3 (citing State v. Poston (Mar. 2, 2000), Cuyahoga App. No. 75846, unreported; State v. Adams (1978), 53 Ohio St.2d 223).
Under R.C. 2905.01(A)(3), the key requirement is the abduction or restraint of the victim in order to terrorize or inflict serious physical harm. The prosecution presented the testimony of Carey Masci, John Anliker, Patrolman Chicon, the photographs of Michelle Gecsey's injuries, Michelle Gecsey's police statement and the trial testimony of Michelle Gecsey. This evidence can reasonably be construed to show that appellant restrained Michelle Gecsey when he grabbed her by the hair and would not let go as she was screaming "help, let me go", that appellant's purpose was to inflict physical harm on her, and that she did suffer serious physical injuries based on the police photographs.
Under R.C. 2905.01(B)(2), such a charge requires one to knowingly restrain one of their liberty while create a substantial risk of serious physical harm. Based on the evidence, it is reasonable to conclude that appellant knowingly restrained Michelle Gecsey of her liberty when she was partially hanging out of the car as appellant sped off dragging her a distance, causing serious physical harm to her as indicated in the photographs.
We note that R.C. 2905.01 defines kidnapping in a variety of ways. The evidence supports a finding that appellant is guilty of kidnapping under R.C. 2905.01(B)(2). The fact that the jury reached a verdict of not guilty for kidnapping under R.C. 2905.01(A)(3) does warrant reversal of appellant's convictions. The verdicts are not inconsistent. Appellant's twelfth assignment of error lacks merit.
Accordingly, for the foregoing reasons, we affirm in part and reverse in part. The trial court shall amend the Judgment Entry of Sentence for the domestic violence conviction from a felony of the fifth degree to a misdemeanor of the first degree.
Consequently, the trial court is ordered to resentence appellant accordingly. The trial court is further instructed to submit an amended Judgment Entry of Sentence reflecting the proper judicial signature. In all other respects, the judgment of the trial court is affirmed.
 _________________________________ JUDGE DIANE V. GRENDELL
FORD, P.J., concurs with concurring opinion, NADER, J., concurs.
[1] Michelle Gecsey allowed the Eastlake Police to photograph her injuries. Three photographs were admitted into evidence.
[2] Appellant was convicted of domestic violence in violation of R.C.2919.25(A) in the Willoughby Municipal Court on April 11, 1989. As a result of his prior conviction he was indicted for a felony of the fifth degree, rather, than a misdemeanor of the first degree. R.C.2919.25(D).
[3] Appellant's assignments of error are listed in their entirety in the appendix.
[4] A magistrate's decision under Crim.R. 19(E) is distinguishable from a magistrate's order under Crim.R. 19(C). Crim.R. 19(E)(1), Staff Notes.
[5] A reviewing court may notice plain error or defects that affect an individual's substantial rights even though they were not objected to in a timely or proper manner. Crim.R. 52(B).
[6] Evid.R. 614(A) provides, in relevant part: "* * * The Court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
[7] Pursuant to Crim.R. 30(A), appellant preserved review of his assertion of error on appeal as to the denial of his proposed instructions.
[8] A "family or household member" is one who is residing or has resided with the offender as a "person living as a spouse." R.C.2919.25(E)(1)(a)(i). A "person living as a spouse" is, among other things, one who is cohabitating with the offender or has cohabitated with the offender within five years prior to the date of the alleged commission of act in question. R.C. 2919.25(E)(2).
[9] The trial court shall order a judgment of acquittal of one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction of such offense or offenses. Crim.R. 29(A).
[10] While there is no evidence of impropriety in this case, trial courts should endeavor to set forth the specific reason why a trial judge is "unable" to perform when another trial judge is substituted in a pending case. Trial courts are reminded that the substitution standard is "unable" to perform, not mere unavailability to perform.
[11] Any clerical errors in judgments, orders, or errors in the record arising from oversight or omissions may be corrected by the court at any time. Crim.R. 36.
[12] R.C. 2953.08(A) allows a defendant to appeal as a matter of right his felony sentence.
[13] Appellant, 32 years old, had thirty-two prior criminal convictions and was imprisoned on six different occasions.
 APPENDIX "Defendant was denied due process of law when his preliminary hearing was heard by a magistrate who did not issue a report and bound over his case to the Lake County Grand Jury without an order signed by a judge."
 "Defendant was denied due process of law when [the] court called Michelle Gecsey as a court's witness."
 "Defendant was denied due process of law when the court permitted prior statements by Michelle Gecsey to be read to the jury."
 "Defendant was denied a fair trial when hearsay evidence was offered."
 "Defendant was denied due process of law by reason of improper argument to the jury."
 "Defendant was denied due process of law when the court would give no jury instruction concerning defendant's theory of the case."
 "Defendant was denied due process of law when defendant was sentenced for a felony of the offense of domestic violence when the jury was not instructed to find the additional element."
 "Defendant was denied due process of law when he was convicted of domestic violence."
 "Defendant was denied due process of law when a judgment of acquittal was overruled as to the offenses of kidnapping and abduction."
 "Defendant was denied due process of law when a judge other than the trial judge sentenced defendant."
 "Defendant was denied due process of law when he was sentenced to a maximum sentence."
 "Defendant was denied due process of law and his right not to be placed twice in double jeopardy were violated when he was convicted of one version of kidnapping and acquitted on a second version of kidnapping."
 CONCURRING OPINION